[Civ. No. 55357. Second Dist., Div. Five. June 11, 1980.]

In re the Marriage of NANCY LEE and JOHN BANZLEY
AYLESWORTH.
NANCY LEE AYLESWORTH, Appellant, v.
JOHN BANZLEY AYLESWORTH, Appellant.

870

COUNSEL

Malcolm Levinthal for Appellant Wife.

Arthur J. Crowley and Howard E. Blumenthal for Appellant Husband.

## OPINION

**STEPHENS, J.**—This is an appeal from a modification of an interlocutory judgment of dissolution of marriage originally entered in 1971. Petitioner, respondent and cross-appellant Nancy Lee Aylesworth (hereinafter Nancy) filed an order to show cause seeking inter alia modification of child and spousal support on December 20, 1976, and thereafter filed an amended order to show cause on April 7, 1977.

The trial court granted petitioner's request, in part, and modified the interlocutory judgment of dissolution as follows: (1) The amount of child support was increased from $325 per month per child (for four children, totalling $1,300 monthly) to the sum of $900 per month per child (totalling $3,600 monthly); (2) Nancy's former husband, John Banzley Aylesworth (hereinafter John), was ordered to pay private school tuition of $2,400 per year for one of the children.

While awarding petitioner attorney's fees of $7,500, the court refused her request to modify the spousal support agreement.

## FACTS

The trial court found that John had a net worth of more than $1 million with a net income after taxes of approximately $22,500 per month. John stipulated that he had the ability to pay any reasonable increase in child support payment.

The court further found that since the time of the prior order Nancy's "fortunes [had] declined drastically [and that] she is presently in a deficit financial position...[while] the needs of the children ...[had] increased due to their growth, aging and the increased costs of living due to inflationary pressures." At the same time, John's fortunes were found to have dramatically improved and that $900 per month per child was the reasonable expense for the care and housing of the children and afforded them amenities "commensurate with their position as children of a wealthy father...."

The oldest child, John (hereinafter Duke), is presently under constant medication for epilepsy, and the court found it in his best interests to stay enrolled in a small private school where he received personalized attention. John was ordered to pay the yearly tuition of $2,400.

Nancy's request to modify the original spousal support agreement was denied on the basis of prefatory language found within the marital settlement agreement stating that with the exception of child support the agreement was intended to be "final, binding and non-modifiable."

Nancy's request at trial for attorney's fees was in the amount of $21,500 and was based primarily upon this being one of the largest child support orders ever obtained in California. As mentioned above, appellant was ordered to pay Nancy's attorney $7,500.

## ISSUES

The issues on appeal, including Nancy's issues on cross-appeal are: (1) was the original order for spousal support modifiable; (2) did the court abuse its discretion in determining the amount of child support awarded to Nancy, (3) did the court abuse its discretion in ordering John to pay Duke's private school tuition, and (4) was the court's order regarding attorney's fees inadequate as a matter of law?

I. Is the original spousal support order nonmodifiable as a matter of law?

In its finding that the original spousal support order was nonmodifiable, with the exception of the child support provision, the trial court relied upon the following prefatory language found in a "Marital Settlement Agreement" (hereinafter MSA) executed by the parties on March 19, 1971 (p. 2) "With the exception of provisions relating to child custody and child support, this Agreement is intended to be a final, binding, and non-modifiable agreement between said parties."

■ Cross-appellant contends that the trial court erred in relying upon this language because it was not specifically included within the interlocutory judgment of dissolution (hereinafter Order) dated May 7, 1971.[1] We find no merit in this contention.

---

[1] We do note that there was a more specific provision found within the MSA and directly quoted in the Order: "(e) That $350.00 of the total support to be paid to

The language of the Order, after awarding custody of the children to petitioner, begins with the wording: "Pursuant to the Marital Settlement Agreement dated March 19, 1971 it is ordered:" and then incorporates a large portion of the MSA verbatim. Among those portions of the MSA not explicitly used in the Order are the first two pages of that agreement in which is found the above quoted language relied upon by the court in its finding of nonmodifiability. The Order begins quoting from the MSA on the page immediately following the provision cited by the court.

Finally, the last paragraph of the Order states: "It is further ordered that: [¶] The written Marital Agreement executed by the parties hereto, dated March 19, 1971, and received in evidence as petitioner's Exhibit '1' [in the original dissolution], is hereby *approved*, and the parties are specifically ordered to perform the executory provisions thereof." (Italics added.)

It is well established that spousal support is modifiable unless and to the extent that the parties make it otherwise. Civil Code section 4811, subdivision (b), provides in pertinent part: "...[t]he provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation...except to the extent that any *written agreement, or, if there is no written agreement, any oral agreement* entered into in open court between the parties, specifically *provides to the contrary.*"

We find that the nonmodifiable clause found in the first two parts of the MSA fulfills the exception requirement of section 4811, subdivision (b), and was properly relied upon by the trial court in that even though it was not included in the quoted portions of the MSA found in the original Order, it was nevertheless part of that Order. The MSA must be considered to have been incorporated into the Order in *its entirety.*

petitioner [Nancy] and the minor children of the parties shall be *nonmodifiable*, either upward or downward, at the instance or request of either party, except in accordance with the terms herein, for so long as petitioner owns the Malibu property." (Italics added.)

Nancy's ownership of the Malibu property was not raised as an issue before the trial court. Although both counsel stipulated on appeal that Nancy does not presently own the Malibu property, there is no evidence in the record to indicate that she did own it at the time the MSA was executed, and therefore it is uncertain whether the provision in question ever had any legally binding effect. Cross-appellant's contention that "it can be reasonably inferred from [Nancy's] Financial Declarations...that she no longer owns that property," even if viewed as valid evidence of lack of current ownership, does not resolve the aforementioned problem.

In *Tilghman* v. *Superior Court* (1974) 40 Cal.App.3d 599 [115 Cal.Rptr. 195], a major portion of a spousal support provision of an integrated marital agreement was cited verbatim in the court's order, except that it eliminated the last sentence of the quoted paragraph, which provided that spousal support payments were nonmodifiable and would continue after wife's remarriage. (*Id.* at p. 603.) In that case we concluded that after the trial court had "approved" the agreement, it did not have the power to incorporate into its decree most of the paragraph in question, but omit the provision that spousal support could not be modified. (*Id.* at p. 613.) Noting that there is strong justification for nonmodifiable provisions, we again hold that a trial court, after approving a marital settlement agreement containing a nonmodifiable provision cannot, by partial severance, make the payments modifiable without permission of the parties.

II.  Did the trial court abuse its discretion in determining the amount of child support?

Nancy requested an increase in child support from $325 per month per child to $1,250 per month per child. Among other reasons, she claimed the following as changed circumstances: (1) the children's needs had increased because they were now five years older than at the time of the original order, (2) she used a substantial portion of the $115,000 she received as her share of community property to augment the living expenses of the family and has no significant present independent income, (3) the need for long term support to develop a career as a clinical psychologist and (4) John's increased ability to pay.

Respondent contends that the court's finding as to the need for increased child support is supported by substantial evidence, including Nancy's financial declaration (specifically segregating her expenses from those of the children), her amended financial declaration, and testimonial evidence from both Nancy and Mr. Dolan, a certified public accountant, who prepared a financial statement for her by using her cancelled checks and the notations thereon.

Appellant, John, contends that the court's finding was an abuse of discretion in that (a) Nancy "did not carry the burden of proof" on the issue of "[t]he legitimate needs of the children." This argument is based, in part, on the fact that Nancy's monthly expense lists show many categories of expenses wherein there can be made "no clear unequivocal distinction" between the needs of Nancy and those of the children. (b) The expense list prepared by Nancy's certified public ac-

countant is "totally lacking in credibility" because "all his office did was recapitulate the checks in the categories as designated by Nancy [with] no independent verification." (c) The court's finding that the fact that Nancy also enjoyed a benefit from the $115,000 she used to augment the monthly child support payments was irrelevant to the issue at hand—"in that it is impossible to separate the petitioner and the children in this context"—was an admission that the court found it impossible to allocate the expenses between petitioner and children, and in "knowingly award[ing] an excessive amount as child support with the full realization that some of Nancy's expenses were 'buried' in that list" it committed reversible error. (See *In re Marriage of Ames* (1976) 59 Cal.App.3d 234 [130 Cal.Rptr. 435].) (d) Finally, through the use of conflicting testimony and financial statements filed by petitioner, appellant contends that "Nancy deliberately depleted [the $115,000 within the last 24 months immediately preceding the modification hearing] to artificially establish a standard of living which had never heretofore existed for the four minor children," and therefore there is no substantial evidence to support the finding by the trial court that Nancy spent the $115,000 since 1971 to augment the monthly child support.

■ It is well established that the amount of child support rests in the sound discretion of the trial court and an appellate court cannot interfere with the trial court order unless, as a matter of law, an abuse of discretion is shown. (*Primm* v. *Primm* (1956) 46 Cal.2d 690, 694 [299 P.2d 231]; *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 947 [126 Cal.Rptr. 805].) The power of the appellate court therefore begins and ends with the determination as to whether the trial court had *any* substantial evidence (whether or not contradicted) to support its conclusions. (*Primm, supra,* at p. 693.) The appellate court should not substitute its own judgment for that of the trial court; it should determine only if any judge reasonably could have made such an order. (*In re Marriage of Siegel* (1972) 26 Cal.App.3d 88 [102 Cal.Rptr. 613].)

■ While a review of the entire record reveals apparent contradictions in the testimony and affidavits of petitioner, there are equally favorable inferences to support her position in most of these instances, and even if the $115,000 is found not to have been spent to sustain a certain level of standard of living exclusively for the children, we find alternate oral testimony of Nancy sufficient to support the trial court's order increasing the child support.

Resolving conflicts in the evidence against the appellant, Nancy's oral testimony established the children's needs to be in excess of $3,600

per month, and this testimony is also supported by that of her accountant. Appellant's attack of the latter—no independent verification —goes to credibility, which is not in issue regarding substantiality of the evidence. Therefore, appellant's contentions therein are misplaced.

Appellant's final argument, regarding the trial court's supposed "impossibility" of distinguishing between Nancy's and the children's expenses, is also misplaced in that the language used by the court in its finding refers to the impossibility of distinguishing life styles, not expenses per se.

There is no issue as to John's ability to pay since he stipulated that he could pay any reasonable child support order made by the court.

In a case factually and legally very similar to the one at bench, the court in *Singer* v. *Singer* (1970) 7 Cal.App.3d 807 [87 Cal.Rptr. 42], stated (at p. 813): "The law is well established that '[t]he father's duty to support the children does not end with furnishing the mere necessities of life if he is able to afford more. Children are entitled to be supported in a style and condition consonant with the position in society of their parents. [Citations.]'"

As in the case before us, the *Singer* court found that in light of a stipulation as to ability to pay any reasonable child support order, evidence of a luxurious manner of living, and a firm refusal to be more specific as to actual income and expenses, the father "can hardly object to an allowance that does not exceed the amount demanded in the pleadings...." (*Id.*)

III.  Did the trial court abuse its discretion in ordering appellant to pay for his son's private school tuition.

The oldest child, Duke, was in a private school in Texas for 18 months and returned home to live with Nancy approximately 5 months before trial, at which time she enrolled him in a small private school in Santa Monica—"not a special education school, but...a very fine small private school." Prior to his enrollment in this school (Crossroads), Duke had had some "educational difficulties" in that he "was out of school a great deal...[and] felt very badly [because] some fun was made of him." The "educational difficulties" involved epileptic seizures.

Duke is currently "on medication [but] is not having seizures at present." Respondent also stated in her testimony that Crossroads "stay[s] very closely in touch with the children . . . [and] it's been a great benefit to him . . . ."

The above is the only evidence of Duke's "need" to be enrolled in a private school, the entirety of which is contained in respondent's testimony.

Based upon this evidence the court found that because of Duke's physical disability, it is in his best interests "to attend [Crossroads] where he is afforded personalized attention rather than the larger public school."

John asserts that this portion of the order must be reversed "inasmuch as the court had no evidence upon which to base [its finding]." Duke's seizures are controlled by medication, there is no evidence to show Duke's medical problem is assisted by his attending the private school, and there is no evidence that he has a learning disability and "[i]n fact, the private school is not a special education school at all."

■ We find the order to be correctly based upon John's ability to pay and Nancy's *uncontradicted* testimony, which established need.

A child is entitled to an award of private school tuition where appropriate to his parents' income. (*Straub* v. *Straub* (1963) 213 Cal.App.2d 792, 798 [29 Cal.Rptr. 183].) In *Straub*, when the original order was made the child in question was eight years old. At the time of the motion for modification of child support the child was 19 years old and a student at Stanford University. The father contended that "the child should attend a publicly supported school because in attending a private university he [had] fixed the mode of living to which the father must now conform." (*Id.* at p. 798.) In rejecting this argument the *Straub* court, quoting *Bailey* v. *Superior Court* (1932) 215 Cal. 548, 555 [11 P.2d 865], stated that "'[t]he father's duty of support for his children does not end with the furnishing of mere necessities if he is able to afford more.'" The court ordered the father to pay the tuition of the private school "[c]onsidering the right of a child to be supported in a style consonant with the position in society of its parents." (*Straub, supra*, at p. 798.)

John argues that *Straub* is inapplicable herein because it "has absolutely nothing to do with the needs of a child for private school caused by an alleged medical condition." John also notes that the trial court refused Nancy's request that he also pay tuition at the same private school for their daughter, Cynthia. John concludes that the award of tuition for Duke was therefore an abuse of discretion since "the purported medical need of [Duke] is no longer existent."

Appellant's argument, while a model of technical prowess, unfortunately steers wide of the real issue. While Duke's epileptic seizures may be temporarily controlled by the use of medication, at minimum it is a legitimate and reasonable inference from respondent's testimony that the closer personal attention afforded Duke at Crossroads School is of personal benefit to him in helping to alleviate his past anxieties related to school, and in helping him to cope with and adjust to his need for medication and all the attendant psychological problems accompanying such an illness in a young man. Moreover, this finding is not inconsistent with the court's refusal of Nancy's request for private tuition for Duke's sister, Cynthia, who has never attended private school and shows no need or evidence that such attendance would be of a more personal benefit to her than it would be to any child in general.

IV.    Was the amount the court awarded petitioner's attorney for fees an abuse of discretion?

Nancy contends that the trial court's order that appellant pay her attorney $7,500 for fees is inadequate as a matter of law and requests that this order be raised to $25,000. Her original request at trial for attorney's fees was $21,500. In support of her position the following arguments are made:

(1)    She had two previous attorneys who were unsuccessful in settlement negotiations; therefore, "indicating a difficult situation for settlement and the necessity for trial."

(2)    Her counsel spent 175.4 attorney hours and 53.8 paralegal hours in preparation for this matter, not including trial time, and

(3)    The results accomplished by her counsel were unusual, this being "one of the largest child support orders ever obtained under the California Family Act. The net economic benefit of this to Nancy is approximately $45,000 per year."

Respondent cites the cases of *Crevolin* v. *Crevolin* (1963) 217 Cal. App.2d 565 [31 Cal.Rptr. 622], and *Anthony* v. *Anthony* (1968) 259 Cal.App.2d 156 [66 Cal.Rptr. 420], in support of its primary argument regarding results accomplished as "one factor that the court may use in the determination of appropriate attorney's fees...." These cases, however, are readily distinguishable from the case at bench. In *Crevolin, supra,* not only was the amount involved in the millions of dollars, but the "result obtained was more than seven times the amount of the first offer of settlement." (*Id.* at pp. 571-572.) Moreover, in that case, five expert witnesses testified to the effect that "the value of the services [of the attorney] ranged from $125,000 to $200,000," and the attorney's fees awarded were $125,000. (*Id.* at p. 572.) In *Anthony, supra,* the award of attorney's fees was $53,000, wherein two experts "valued [those] services at $75,000 and $85,000." (*Id.* at p. 158.) Again, the "results" of that case are substantially different than the one at bench. In *Anthony* the attorney awarded the fees as the result of negotiations obtained for his client "in addition to defendant's offered $415,000 in property and $1,000 monthly, trust income worth $450,000, $500 monthly in child support and...promises to pay income taxes through 1966, to pay all accrued real property taxes and to pay plaintiff's attorneys' fees known to be substantial." (*Id.*)

More importantly, in both the above cases the appellate court upheld the decision of the trial court, whereas respondent herein is asking us to reverse the order below. "...A motion for attorney fees and costs in a dissolution action is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse, its determination will not be disturbed on appeal." (*In re Marriage of Cueva* (1978) 86 Cal. App.3d 290, 296 [149 Cal.Rptr. 918].) The *Cueva* court continued by stating that "[t]he discretion invoked is that of the trial court, not the reviewing court, and the trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. [Citations.]" The *Cueva* court held that the award of $21,000 attorney's fees to the wife's attorney was an abuse of discretion, even though he had submitted evidence to the court concerning the reasonable value of his fees. In the case at bench respondent's attorney was unable to substantiate his claim for hours spent on the case in that he did not bring any records to the trial court.

Moreover, the trial judge's "experience and knowledge afford sufficient basis for the fixing of the amount of an attorney's fees, even in the

absence of specific evidence on the subject. [Citations.] This...rule is predicated upon the basis that evidence as to the reasonable value of the services is necessarily before the trial court when it hears the case, and that the trial judge, being a lawyer, can readily ascertain from the case the value of the services performed in his presence and the approximate time spent in preparation." (*Straub* v. *Straub, supra,* 213 Cal.App.2d 792, 800.)

█ The case at bench is an uncomplicated order to show cause re modification, the scope of the proceeding was limited by appellant's stipulation that he could pay any reasonable child support order made by the court, and respondent's attorney provided insufficient documentation to validate his statement regarding hours spent on the case. Moreover, the result he obtained, although admittedly a large one, was just three times that stipulated to by the parties almost a decade earlier. In light of the above, we find that the trial court did not abuse its discretion in awarding respondent attorney's fees in the amount of $7,500.

The trial court's order modifying the interlocutory judgment of dissolution is affirmed.

Affirmed.

Kaus, P. J., and Hastings, J., concurred.

On July 9, 1980, the opinion was modified to read as printed above.