[No. B021549. Second Dist., Div. Two. Mar. 4, 1987.]

FABIENNE WHITE, Plaintiff and Appellant, v.
MAURICE MARCIANO, Defendant and Respondent.

Counsel

Allred, Maroko, Goldberg & Ribakoff, Michael Moroko and Elizabeth Grady for Plaintiff and Appellant.

Simon Taub and Edward J. Horowitz for Defendant and Respondent.

**Opinion**

**FUKUTO, J.**—Plaintiff, Fabienne White, appeals the court's judgment in her paternity action against respondent, Maurice Marciano, in which he was ordered to pay child support in the sum of $1,500 per month.[1] We affirm.

Appellant contends that the trial court erred by:

1.   Granting respondent's motion for protective order which precluded discovery of respondent's net worth and lifestyle.

2.   Refusing to allow the presentation of evidence of respondent's net worth and lifestyle at time of trial.

3.   Awarding only $8,000 in attorneys' fees.

4.   Ruling, "in effect, that illegitimate children may be treated differently from legitimate children insofar as the lifestyle of a wealthy parent was disregarded by the court."

Appellant filed her action seeking a declaration that respondent is the father of appellant's baby and an order that respondent pay "reasonable child support in accordance with his abilities and the child's needs."

In an order to show cause for temporary support, filed two days after filing of the paternity complaint, appellant asserted reasonable support would amount to $3,500 per month plus medical benefits. In his response to the order to show cause, respondent admitted that he was the baby's father and

---

[1]Appellant purports to appeal the court's order granting defendant's motion for a protective order against discovery and the court's tentative decision following trial of the action.

A discovery order is not appealable, but may be reviewed on appeal from the final judgment.

A tentative decision is a preliminary order only and not appealable. (Code Civ. Proc., § 904.1.)

that he could "pay any reasonable sum for the support of this newly born child." He submitted a responsive income and expense declaration, but gave no financial information, asserting that it was "not applicable in view of stipulation."

At the hearing on the order to show cause, respondent again stipulated that he had the ability to pay any reasonable support order, including the $3,500 per month requested by appellant, but contended that $3,500 per month was excessive. He also admitted that he had an income of approximately $1 million per year.

Based upon respondent's admissions and stipulations, the court sustained objections to questions concerning respondent's lifestyle and net worth.

Respondent was ordered to pay $1,500 per month as temporary support for the baby.

Following the hearing on the order to show cause, appellant served several subpoenas, notices to produce and related discovery documents directed to custodians of respondent's business and personal financial records. Appellant also sought respondent's deposition and requested production of various documents, including tax returns, financial statements, checkbooks, savings accounts, etc. Appellant stated that the documents were material to the issues involved in the case because, "these documents will reflect the amount of income available to defendant to pay said child support."

Respondent moved for a protective order. He again acknowledged that he was the father of the child, had the ability to pay any reasonable child support and that his gross income was approximately $1 million per year. He further admitted that he lived a lifestyle commensurate with someone who has earnings of that amount, including traveling, eating in fine restaurants and entertaining. He argued that more detailed information was not relevant since he had made the foregoing stipulations.

Appellant argued that the effect of respondent's stipulations and refusal to provide evidence concerning his finances and lifestyle was to deprive the court of the ability to make a reasonable award of child support because the court would have no evidence, no facts, and no information of circumstances on which to base its final decision.

The trial court granted respondent's motion and subsequently denied appellant's motion for reconsideration.[2]

---

[2]Following the granting of respondent's motion for protective order, appellant again noticed respondent's deposition. Respondent again moved for a protective order. Appellant is also seeking review of this order, but notes that the second motion was essentially repetitious of, and based on, the original motion for protective order and therefore was not treated separately in this appeal.

Trial was held April 8, 1986, when the baby was 21 months old. Respondent repeated his admissions and stipulations. Appellant argued for the admission of evidence concerning respondent's net worth and lifestyle and repeated her contention that without such evidence, the court had no facts on which to base a child support order. Appellant also advanced the argument that the court's failure to allow into evidence more detailed information was but a veiled attempt to treat an illegitimate child differently from a legitimate child and that such an attempt was against public policy. The matter was taken under submission and on April 9, 1986, the court issued a tentative decision. On June 5, 1986, the trial court entered final judgment based upon the tentative decision. The court ordered respondent to pay $1,500 per month support plus medical insurance and to pay $8,000 attorneys' fees.

This case involves, inter alia, the following question:

Is detailed evidence concerning a noncustodial parent's lifestyle and net worth relevant in determining what amount of child support is "reasonable" where the noncustodial parent stipulates that he has an income of $1 million per year and is able to pay any reasonable amount of child support?

The father and mother of a child have an equal responsibility to support and educate their child. (Civ. Code, § 196.) ■ Illegitimate and legitimate children are to be treated alike. (*Stargell* v. *Stargell* (1968) 263 Cal.App.2d 504, 507 [69 Cal.Rptr. 715].) California has enacted legislation to guide the trial court in determining both the needs of the child and the amount of child support to be awarded to meet those needs.

The Agnos Child Support Standards Act of 1984 establishes a system of mandatory minimum child support amounts. (Civ. Code, § 4700 et seq.) When appropriate, a higher amount of child support may be awarded. In setting a higher level of child support, the court "shall be guided by the criteria set forth in applicable statutes, relevant case law . . . and the legislative intent that children share in their parents' standard of living . . . ." (Civ. Code, § 4724.)

A child is to be supported in the manner suitable to the child's circumstances, taking into consideration the parents' respective earnings or earning capacity of the parties. (Civ. Code, § 196.)

■ Generally, children are entitled to be supported in a style and condition consonant with the position in society of their parents. (*In re Marriage of Aylesworth* (1980) 106 Cal.App.3d 869 [165 Cal.Rptr. 389].) A parent's duty of support does not end with the furnishing of mere necessities if the

parent is able to afford more. ■ Support must be reasonable under the circumstances. (*Stargell* v. *Stargell, supra,* 263 Cal.App.2d at p. 507.) How much "more," i.e., what amount is "reasonable" is defined in relation to a child's "needs" and varies with the circumstances of the parties. (*Singer* v. *Singer* (1970) 7 Cal.App.3d 807, 813 [87 Cal.Rptr. 42].)

■ Clearly where the child has a wealthy parent, that child is entitled to, and therefore "needs" something more than the bare necessities of life. ■ It is also clear that the court is required to consider, in a general sense, the noncustodial parent's standard of living. However, contrary to appellant's contentions, a trial court is not required to consider detailed lifestyle and net worth evidence in reaching a decision as to the needs of the child or the amount of support to be awarded.

The standard of living to which a child is entitled should be measured in terms of the standard of living attainable by the income available to the parents rather than by evidence of the manner in which the parents' income is expended and the parents' resulting lifestyle. It matters not whether the respondent, noncustodial parent miserly hoarded his $1 million per year income and lived the life of a pauper or whether he lived the life of a prince spending every cent of the available income.

We believe evidence of detailed lifestyle and net worth to be relevant only in those situations where the ability of the noncustodial parent to make adequate support payments may be affected by the unwise expenditure of income to the detriment of the supported minor. Where there is no question of the noncustodial parent's ability to pay any reasonable support order, we conclude that evidence of detailed lifestyle to be irrelevant to the issue of the amount of support to be paid and thus protected from discovery and inadmissible in determining the support order.

Appellant's reliance upon *In re Marriage of Aylesworth* and *Singer* v. *Singer* is misplaced.

In *Aylesworth,* the trial court increased the amount of child support from $325 per month to the sum of $900 per month per child. On appeal by the father, the judgment was affirmed. The court took into consideration the father's stipulation that he could pay any reasonable amount of child support and the father's admission that he lived a life of luxury. The court held, in essence, that these admissions were factors to be considered in determining the needs of the children. The court concluded that the children could expect to live in a style and condition consonant with their parents' position in society. While it is true that the *Aylesworth* trial court had more detailed information concerning the father's net worth and lifestyle available to it

than did the trial court in the instant case, such detailed information was not necessary to the *Aylesworth* trial court's decision. (*In re Marriage of Aylesworth, supra,* 106 Cal.App.3d at p. 869.)

In *Singer,* the father also stipulated that he had an affluent living standard and had the ability to pay any amount of child support. The mother appealed, objecting to the amount awarded. The court of appeal remanded the case to the trial court for a reevaluation of the circumstances of the parties, finding that the trial court had abused its discretion by restricting the presentation of evidence relating to the *support needs* of the children. We see no such restriction in the case at bench. (*Singer* v. *Singer, supra,* 7 Cal.App.3d at p. 807.)

Once we have made the determination that detailed lifestyle and net worth evidence was not necessary in establishing the needs of the child or the amount of child support to be awarded, we need only review the record to determine whether the trial court had *any* substantial evidence (whether or not contradicted) to support his award of $1,500. (*In re Marriage of Aylesworth, supra,* 106 Cal.App.3d at p. 876.)

It is well established that the amount of child support rests in the sound discretion of the trial court and an appellate court will not interfere with the trial court order unless an abuse of discretion is shown. The appellate court should not substitute its own judgment for that of the trial court; it should determine only if any judge reasonably could have made such an order. (*In re Marriage of Aylesworth, supra,* 106 Cal.App.3d at p. 876.)

In the case at bench, the court considered respondent's stipulation that he had an annual income of $1 million; that he lived a lifestyle commensurate with that income; and that he could pay any reasonable amount of child support. Appellant testified that she is 30 years old, left high school after the eleventh grade and never returned, works as a model and food stylist for television commercials and makes an annual income of approximately $14,000. Appellant also testified that she lives in a two-bedroom apartment with her 81-year-old grandmother and the baby. The rental on the apartment is $600 per month, with appellant contributing $300 and her grandmother contributing $300. Appellant's grandmother usually takes care of the baby while appellant is working. Appellant's 11-year-old daughter from her marriage, who resides with appellant's ex-husband, occasionally visits on weekends and other times. Appellant acknowledged that the baby would not be eligible for nursery or preschool for almost 18 months from the time of trial. Appellant then testified concerning what she would like for herself and the child. She would like to move from a neighborhood she considers to be unsafe to a three-bedroom house, near a park. Appellant also testified that

she would like to hire a full-time nanny for the baby. Based upon the evidence presented, the court fixed $1,500 as a reasonable sum for support of a 21-month-old child. The court noted that the award of $1,500 "undoubtedly will allow plaintiff to substantially improve her own economic status, in that it should cover more than the direct out-of-pocket expenses incurred on behalf of the minor." This conclusion is consistent with the evidence presented and there was no abuse of discretion.

■ Appellant also contends that the trial court ruled "in effect that illegitimate children may be treated differently from legitimate children insofar as the lifestyle of a wealthy parent was disregarded by the court." Appellant contends that the father's failure to exercise visitation denies the child the opportunity to enjoy the same standard of living enjoyed by the father and permits the father to support the child in a style below what is consistent with the father's earnings and position in society. Such an interpretation of the trial court's order is unsupported by the record. The court below acknowledged the broad public policy that illegitimate and legitimate children are to be treated alike, and then applied the *Stargell* standard and set the amount of the child support award by determining that which was "reasonable under the circumstances." The record indicates that the trial judge considered respondent's admissions and stipulations concerning his ability to pay, his status as a millionaire and commensurate lifestyle in setting the amount of support. More importantly, the trial court, consistent with this court's conclusion, measured the standard of living to which the child should be entitled by the standard of living attainable by the income available to both the child's parents.

Appellant also claims that the trial court awarded unreasonably low attorneys' fees.

■ It is settled that in establishing the amount of attorneys' fees to be awarded, a judge may rely upon his own experience and knowledge of the law practice, as well as the facts and circumstances of the case as they appear from pleadings and other papers. (*In re Marriage of Aylesworth, supra,* 106 Cal.App.3d at pp. 880-881, citing *Straub v. Straub* (1963) 213 Cal.App.2d 792, 800 [29 Cal.Rptr. 183].)

■ A motion for attorneys' fees and costs in domestic litigation is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse, its determination will not be disturbed on appeal. (*In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296 [149 Cal.Rptr. 918].)

A reviewing court will only interfere if it finds that under all evidence, viewed most favorably in support of the trial court's action, no judge could

reasonably make the order made. (*In re Marriage of Cueva, supra,* 86 Cal.App.3d at p. 296.)

■  Viewing the evidence most favorably in support of the trial court's action it is clear that the trial court in this case made a reasonable order based on the facts and circumstances of the case.

Appellant requested $15,000, but was awarded only $8,000, or approximately 53 percent of the requested amount. Appellant's attorney conceded that 50 to 60 percent of his work involved the "lifestyle" discovery issue. The trial court reduced the fees claimed by appellant by roughly that amount. The court concluded that this was a "relatively simple case" and that it was not "reasonable to pursue discovery as to defendant's lifestyle once he conceded his income was a million dollars a year." Appellant claims that this was a complicated case requiring vigorous litigation in order to make an appropriate record. However, appellant properly raised and preserved the "lifestyle" discovery issue in her initial attempt to subpoena records and to take respondent's deposition. Subsequent efforts made in that regard were unnecessary. Appellant also asserts that there is no reported case in California which specifically decides the issue of the relevance of the financial condition of the parents of an illegitimate child. While there may be no reported decision dealing with this extremely narrow issue, there is ample statutory and case law establishing the criterion to be considered in determining the amount of child support to be awarded.

In light of the facts and circumstances facing the trial court judge in this case, we cannot say that there has been a "clear showing of abuse."

The judgment is affirmed.

Roth, P. J., and Gates, J., concurred.