[No. B075365. Second Dist., Div. Three. Feb. 10, 1994.]

EMILIO ESTEVEZ, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CAREY L. SALLEY, Real Party in Interest.

**COUNSEL**

Trope and Trope, Sorrell Trope, Thomas Paine Dunlap and Bruce E. Cooperman for Petitioner.

No appearance for Respondent.

Knerr & Oyler, Connolly Oyler and Edmund Knerr for Real Party in Interest.

**OPINION**

**KITCHING, J.**—Petitioner Emilio Estevez (Estevez) seeks a writ of mandate compelling the respondent superior court to vacate its order of May 3, 1993, directing Estevez to produce information and documentation relating to his income, expenses, and assets, in connection with the application of real party in interest Carey L. Salley (Salley), on behalf of herself and the two minor children of the parties, for modification of child support.

■ The sole question presented by the petition is whether subsequent legislative enactments have abrogated the ruling of *White* v. *Marciano* (1987) 190 Cal.App.3d 1026 [235 Cal.Rptr. 779], that a trial court may preclude discovery of the net worth and lifestyle of a noncustodial parent

where there is no question as to that parent's ability to pay any reasonable support order. We determine the rule set forth in *White* v. *Marciano* remains viable, and grant the petition.

## INTRODUCTION

*White* v. *Marciano, supra,* 190 Cal.App.3d 1026, dealt with the Agnos Child Support Standards Act of 1984, which established a system of mandatory minimum child support amounts. (Former Civ. Code, § 4700 et seq.)

The discovery order that is the subject of this appeal was made pursuant to the child support guideline adopted and set forth in former Civil Code sections 4720 and 4721 as amended effective September 22, 1992. (Stats. 1992, ch. 848 (Sen. Bill No. 1614), § 5, eff. Sept. 22, 1992.) These and other relevant sections of the Civil Code were repealed prior to or effective January 1, 1994, and most of their provisions were enacted as sections of the new Family Code operative on the same date. The provisions of former Civil Code section 4720 now appear in Family Code sections 4050 through 4054, and the provisions of former Civil Code section 4721 now appear, with some revisions which do not affect the outcome of this case, in Family Code sections 4055 through 4069.

Because this is an ongoing case, and the child support order ultimately made in response to Salley's modification request will reflect present law, we will refer in our discussion to both the relevant Civil Code sections in effect at the time of the modification request, and the comparable sections of the newly enacted Family Code. We will also refer to former sections of the Civil Code comprising the Agnos Child Support Standards Act for the statutes in effect at the time of *White* v. *Marciano, supra,* 190 Cal.App.3d 1026.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties, who were never married, have two minor children, born in 1984 and 1986. In a stipulation and agreement reflected in a court order of June 1, 1987, Estevez acknowledged paternity and agreed to pay Salley child support in the total sum of $3,500 per month. Estevez also agreed to maintain a medical insurance policy, and to pay reasonable and necessary medical, hospital, and dental expenses not covered by the insurance policy. In addition, Estevez has voluntarily provided child care, a housekeeper, vacations, food, transportation, private schooling and a four-bedroom house

in Malibu with beach and tennis club facilities.[1] He has also paid for various miscellaneous expenses.

1. *Order to Show Cause Regarding Modification of Child Support Order.*

In January 1993, Salley sought modification of the child support order to comport with the guideline then set forth in Civil Code section 4721. She estimated the support "package" then being provided by Estevez was worth in excess of $14,000 per month, and stated she was not dissatisfied with the package, but only with the manner in which it was dispensed, as Estevez was not obligated by law to provide assistance in excess of the earlier support order, and her Malibu home was provided through the generosity of Estevez's parents, who were not obligated to continue this assistance.

Salley estimated Estevez had a gross monthly income in excess of $300,000. She listed the actual monthly expenses of her household at $8,653, and her "necessary" expenses at $17,469. The latter figure includes $4,750 to $6,500 allocated to prospective mortgage payments or rent.

Salley stated she wished to obtain appropriate support under the guideline so that she could rent a home in Pacific Palisades, structure her own finances, and pursue a career as an actress.[2] She requested that Estevez be ordered to continue providing support which would enable the children to enjoy the lifestyle to which they had become accustomed, including payment of their medical expenses as previously ordered. She also requested that Estevez be ordered to maintain a $1 million policy of insurance on his life for the benefit of each child.

*The Discovery Proceedings.*

On March 8, 1993, Salley served upon Estevez a plaintiff's request for production and inspection of documents and other tangible things covering the period from January 1, 1991, to the date of the request. She requested production of bank records relating to accounts standing in his name alone or jointly with any other person or for any business enterprise in which he has an interest; income records including copies of 1099 forms, W-2 forms, payroll check stubs or receipts, gifts, loans, commissions, rents, interest, dividends, annuities; books of account; records of loans made by him and monies owed to him; records of employment and fringe benefits he received; records of stock brokerage accounts; records of his debts and liabilities; and documentation of his monthly expenses.

---

[1]Salley owns a home in Reseda which she rents to others at a net loss.
[2]Salley, who apparently has a bachelor's degree, last worked in 1984.

In his response to Salley's request to produce documents, Estevez stipulated that for each of the years 1990, 1991, and 1992, he had a gross income of not less than $1.4 million per year, and that his current gross income is commensurate with those three years. He stated he could pay any reasonable amount the court determines to be necessary for the support of his two minor children.

Estevez maintained he was an extraordinarily high-income earner within the meaning of subdivision (e) of former Civil Code section 4721 (Fam. Code, § 4057, subd. (b)(3)), and that any amount of child support calculated in accordance with the guideline would far exceed the reasonable needs of the children. Therefore, he urged the discovery sought by Salley was precluded by the holding of *White* v. *Marciano*, *supra*, 190 Cal.App.3d 1026. He objected to production of the requested records on the grounds such production was not reasonably calculated to lead to the discovery of admissible evidence, was unduly burdensome, and unreasonably interfered with his right of privacy under article I of the California Constitution, as well as the privacy rights of his current spouse.[3]

Salley made several additional demands upon Estevez to produce the same documents, plus additional documents pertaining to his income and lifestyle, and trust documents, wills, codicils and estate planning documents executed from the date of his marriage to his present spouse. Estevez objected to each production demand on the same grounds he asserted in objecting to the original request.

On April 21, 1993, Salley filed her motion to compel production of documents. She acknowledged that Estevez has an "extraordinarily high income" within the meaning of former Civil Code section 4721, subdivision (e) (Fam. Code, § 4057, subd. (b)(3)), which permits the court to deviate from the support guideline set forth in subdivisions (a) and (b) of former Civil Code section 4721 (Fam. Code, § 4055). However, she claimed the court must first calculate the amount of support called for by strict adherence to the guideline, which requires that the high earner's (Estevez's) net monthly disposable income, and the total net monthly disposable income of both parties, as defined in subdivision (b), be inserted into a formula set forth in subdivision (a), of former Civil Code section 4721 (Fam. Code, § 4055). Only then, Salley urged, is the court to determine whether an exception should be made due to Estevez's extraordinarily high income.

---

[3]Estevez has conceded Salley's right to discover documents evidencing the monetary value of the support "package" he has been providing on behalf of the parties' children. At oral argument before this court, his counsel conceded Salley's right to depose Estevez generally concerning the attributes of his lifestyle.

At the hearing on the motion to compel production of documents held on May 3, 1993, the trial court reluctantly agreed with Salley's position. However, the court determined the quantity of documents requested by Salley was burdensome and oppressive, and, after conferring with counsel in chambers, granted the motion to produce as to a number of documents relating to both income and lifestyle, though not all of the documents requested by Salley.[4]

## DISCUSSION

At all times relevant to our discussion, i.e., at the time of *White* v. *Marciano, supra,* 190 Cal.App.3d 1026, at the time of Salley's modification request and Estevez's petition, and at present, the Legislature intended that children share in their parents' standard of living. (Former Civ. Code, §§ 4720, subd. (e) (Stats. 1984, ch. 1605, § 4), 4720, subd. (a)(3)(F); Fam. Code, § 4053, subd. (f).) A child was then, and is now, to be supported in the manner suitable to the child's circumstances, taking into consideration the respective earnings or earning capacities of the parents. (Former Civ. Code, § 196; *White* v. *Marciano, supra,* 190 Cal.App.3d at p. 1031; Fam. Code, §§ 3900, 4053, subd. (c), 4058, subd. (b).) At the time of *White* v. *Marciano,* the court was required to determine the annual gross income and net disposable income of each parent. (Former Civ. Code, § 4721, subd. (a).) The same requirement was set forth in subdivisions (b)(2), (f) and (g) of Civil Code section 4721 at the time of the modification request and petition; it now appears in sections 4055, subdivision (b)(2), 4058, and 4059 of the Family Code.[5] Finally, a provision that a party to the proceedings may not refuse to submit copies of income tax returns to the court, formerly set forth

---

[4]The court ordered Estevez to produce the following documents: "a. Copies of individual or joint federal and state income tax returns filed by Defendant for the years 1991 and 1992. [¶] b. A declaration prepared by or on behalf of Defendant, signed by him under penalty of perjury, including the following information: [¶] (1) Identification of all currently existing bank accounts, savings accounts, money market accounts, certificates of deposit, and checking accounts, together with the balances held in each for a period four months preceding April 20, 1993; [¶] c. All records evidencing Defendant's current monthly living expenses, set forth in paragraphs 26.A through 26.P of Exhibit 'A' to Plaintiff's Notice of Taking Deposition and Notice to Produce (CCP Section 2025) served on April 16, 1993." These expenses include: "A. Residence payments 1) Rent or mortgage. [¶] 2) Taxes. [¶] 3) Insurance. [¶] 4) Maintenance. [¶] B. Unreimbursed medical and dental expenses. [¶] C. Child Care. [¶] D. Children's education. [¶] E. Food at home and household supplies. [¶] F. Food eating out. [¶] G. Utilities. [¶] H. Telephone. [¶] I. Laundry and cleaning. [¶] J. Clothing. [¶] K. Insurance (life, accident, etc., not including auto, home or health insurance). [¶] L. Education (specify). [¶] M. Entertainment. [¶] N. Transportation and auto expense, including insurance, gas, oil, repair). [¶] O. Installment payments. [¶] P. Incidentals."

[5]In addition, at the time of *White* v. *Marciano,* Civil Code section 4700, subdivision (a) provided that "[a]t the request of either party, the court shall make appropriate findings with

in Civil Code section 4700.7, now appears at section 3552 of the Family Code.

In *White* v. *Marciano*, the respondent stipulated that he had an annual income of $1 million; that he lived a lifestyle commensurate with that income; and that he could pay any reasonable amount of child support. (190 Cal.App.3d at p. 1033.) The court stated: "Clearly where the child has a wealthy parent, that child is entitled to, and therefore 'needs' something more than the bare necessities of life. It is also clear that the court is required to consider, in a general sense, the noncustodial parent's standard of living. However, contrary to appellant's contentions, a trial court is not required to consider detailed lifestyle and net worth evidence in reaching a decision as to the needs of the child or the amount of support to be awarded." (190 Cal.App.3d at p. 1032.)

The court determined "evidence of detailed lifestyle and net worth to be relevant only in those situations where the ability of the noncustodial parent to make adequate support payments may be affected by the unwise expenditure of income to the detriment of the supported minor. Where there is no question of the noncustodial parent's ability to pay any reasonable support order, we conclude that evidence of detailed lifestyle [is] irrelevant to the issue of the amount of support to be paid and thus protected from discovery and inadmissible in determining the support order." (*White* v. *Marciano*, *supra*, 190 Cal.App.3d at p. 1032.)

In our case, Estevez stipulated that he has an annual income of not less than $1.4 million per year, and can pay any reasonable amount of child support. Salley contends *White* v. *Marciano* does not apply because of the legislative enactments subsequent to that decision, namely, former Civil Code sections 4720 and 4721, now Family Code sections 4050 through 4054, and 4055 through 4069.

At all of the relevant times, the Legislature has consistently expressed its intent that the courts shall adhere to the guideline and may depart from it only in the exceptional or special circumstances provided. (Former Civ. Code, §§ 4720, subd. (e) (Stats. 1984, ch. 1605, § 4, pp. 5664-5666), 4720, subd. (a)(2); Fam. Code, § 4052.)

Family Code section 4056, subdivision (a), provides that whenever the court orders an amount for support that differs from the statewide uniform

respect to the circumstances on which the order for the support of a minor child is based." Under the law at that time, a party could also have requested specific findings pursuant to Code of Civil Procedure section 634. (*In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 54 [272 Cal.Rptr. 560].)

guideline formula, the court "shall state, in writing or on the record . . . [¶] (1) The amount of support that would have been ordered under the guideline formula. [¶] (2) The reasons the amount of support ordered differs from the guideline formula amount. [¶] (3) The reasons the amount of support ordered is consistent with the best interests of the children." Former Civil Code section 4721, subdivision (c) required similar findings at the request of any party. At the time of *White* v. *Marciano*, the court was required to justify, on the record, an award of child support below the guideline level. (Former Civ. Code, § 4724, subd. (d) (Stats. 1984, ch. 1605, § 4, p. 5669).)

Subdivision (b) of Family Code section 4056 (former Civ. Code, § 4721, subd. (c)) requires the court, at the request of any party, to state in writing or on the record: "(1) The net monthly disposable income of each parent. [¶] (2) The actual federal income tax filing status of each parent. . . . [¶] (3) Deductions from gross income for each parent. [¶] (4) The approximate percentage of time pursuant to paragraph (1) of subdivision (b) of Section 4055 that each parent has primary physical responsibility for the children compared to the other parent."

There is a rebuttable presumption affecting the burden of proof that the amount of child support established by the guideline formula is the correct amount of child support to be ordered. (Fam. Code, § 4057, subds. (a), (b); former Civ. Code, § 4721, subd. (d).) This presumption "may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case, consistent with the principles set forth in Section 4053, because one or more of the following factors is found to be applicable by a preponderance of the evidence, and the court states in writing or on the record the information required in subdivision (a) of Section 4056: . . . . (3) The parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children." (Fam. Code, § 4057, subd. (b); former Civ. Code, § 4721, subd. (e)(4).)

The parties agree that application of the guideline to Estevez's stipulated annual income of $1.4 million would result in a child support amount of approximately $14,500 per month.[6] In addition, Estevez has stipulated that he can pay *any* reasonable child support award, thereby removing the issue of his ability to pay (*In re Marriage of Catalano* (1988) 204 Cal.App.3d 543, 553 [251 Cal.Rptr. 370]), and indicating he will accede to any order the court may make, even one in excess of the amount called for by the

---

[6]At oral argument, counsel for Salley agreed that if Estevez's income is, as she claims, approximately $300,000 per month, the guideline would call for a support order of approximately $35,000 per month. Counsel conceded such an award would be absurd.

guideline formula, so long as the award addresses the reasonable needs of the children commensurate with his status as an extraordinarily high earner.

We find nothing in the legislative history of the relevant sections of the Family Code or former sections 4720 and 4721 of the Civil Code indicating an intent to abrogate the rule of *White* v. *Marciano, supra,* 190 Cal.App.3d 1026. In fact, it appears the Legislature adopted the rule when it provided that the presumption of correctness of the amount of child support established by the guideline formula may be rebutted upon a showing that the parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the children's needs. (Fam. Code, § 4057, subd. (b); former Civ. Code, § 4721, subd. (e)(4).)[7]

Salley's argument is, essentially, that the presumption must first be established before it can be rebutted. In other words, she contends the trial court must first calculate the amount of support called for by the formula, then consider the needs of the children, and only then determine the presumption has been rebutted. That is what is generally required by subdivision (a) of Family Code section 4056.

The point made by *White* v. *Marciano, supra,* 190 Cal.App.3d 1026, is that such an exercise is unnecessary, to say nothing of unduly burdensome and oppressive (see Code Civ. Proc., §§ 2025, subd. (i), 2031, subd. (e)), in a case like this one, because the information sought is irrelevant to the issue of the amount of child support to be paid by an extraordinarily high earner *who has stipulated that he can and will pay any reasonable amount of child support.*[8] In such a case, where the extraordinarily high earner resists detailed discovery of his or her financial affairs, the trial court may make such assumptions concerning his or her net disposable income, federal income tax filing status, and deductions from gross income as are least beneficial to the extraordinarily high earner, and thereby satisfy the requirements of Family Code section 4056.

We find nothing in the uniform guideline formula presently set forth in Family Code section 4055, or formerly set forth in Civil Code section 4721, to preclude application of *White* v. *Marciano* to this case.

[7]The guideline was enacted to comply with a federal mandate that each state have a single statewide guideline for child support. (Fam. Code, § 4050.) The federal statute (42 U.S.C. § 667) is part of the Aid to Families With Dependent Children (AFDC) Act.

[8]In the event Estevez challenges as unreasonable the amount of child support determined by the trial court, he shall then be required to disclose the financial information requisite to application of the guideline formula.

## DISPOSITION

The petition for writ of mandate is granted. Let a peremptory writ issue compelling the respondent court to vacate its order of May 3, 1993, and issue a new order in conformance with the views expressed herein. Each party to bear their own costs.

Klein, P. J., and Hinz, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied April 21, 1994.