[No. B120155. Second Dist., Div. One. Aug. 19, 1998.]

LARRY JOHNSON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LAURA TATE, Real Party in Interest.

COUNSEL

Kaufman & Young and Lance S. Spiegel for Petitioner.

No appearance for Respondent.

Freid & Goldman, Manley Freid and Gary J. Cohen for Real Party in Interest.

OPINION

**MASTERSON, J.**—The statewide uniform child support guidelines (Fam. Code, § 4050 et seq.)[1] establish a presumption that the amount of a child support award is to be determined by a common formula. The presumption may be rebutted when the parent being ordered to pay support has an "extraordinarily high income." *Estevez* v. *Superior Court* (1994) 22 Cal.App.4th 423 [27 Cal.Rptr.2d 470] holds that once the guideline presumption has been rebutted in this manner, an extraordinarily high earning parent who offers to pay any reasonable amount of court-ordered child support does not need to provide detailed financial discovery to the other parent. We find that the rationale of *Estevez* applies to this case. We therefore grant a high-earning parent's petition for a writ of mandate and order the trial court to disallow such detailed discovery.

BACKGROUND

Petitioner Larry Johnson is a professional athlete with the New York Knicks basketball team. While the Knicks were in Los Angeles, Johnson had sexual relations with real party in interest Laura Tate. Their child, Taylor, was born on August 2, 1997.

Following Taylor's birth, Tate filed a complaint to establish paternity and for child support. She further requested sole custody of Taylor and that Johnson not be granted visitation. In answering the complaint Johnson admitted paternity and consented to the custody and visitation orders requested by Tate. He asserted that his annual income exceeds $1 million and that he has the ability to pay any amount of support the court determines to be reasonable. In December 1997, a pendente lite child support order was entered in the amount of $8,850 per month, with an additional $2,500 per month for a nanny.

In January 1998, Tate made a request for production of several categories of documents. The categories included documents evidencing moneys and

---

[1]Undesignated section references, *post*, are to the Family Code.

fringe benefits paid to Johnson, contracts, tax returns, living expenses for himself and his minor children, travel expenses, bank records, real property holdings, and insurance records. Johnson sought a protective order, asserting that under *Estevez* v. *Superior Court, supra,* 22 Cal.App.4th 423, he was not required to reveal information regarding his income and lifestyle. Tate countered that discovery was required because she had information which indicated that Johnson's annual income was closer to $12 million, and that the difference between this amount and the $1 million admitted by Johnson would be significant in determining Taylor's reasonable needs.

Johnson's motion for the protective order was heard in respondent superior court on February 25, 1998. In ruling on the motion, the court interpreted *Estevez* to be in conflict with the general rule that support should be set at an amount that enables the child to share in the standard of living of the more affluent parent. The court attempted to resolve this conflict by prohibiting discovery of Johnson's income and assets, but permitting discovery of his lifestyle. It therefore granted the requested protective order in part and denied it in part. The protective order was denied with respect to documents pertaining to the living expenses of Johnson and his other children,[2] Johnson's nonbusiness travel expenses, his real property ownership records and his insurance coverage records.

On March 12, 1998, Johnson filed a petition for a writ of mandate challenging the order to the extent that his request was partially denied.[3] On March 19, we issued an order to show cause and placed the matter on calendar for argument.

### DISCUSSION

■ It has long been the law that "[a] child, legitimate or illegitimate, is entitled to be supported in a style and condition consonant with the position in society of its parents." (*Kyne* v. *Kyne* (1945) 70 Cal.App.2d 80, 83 [160 P.2d 910].) "The father's duty of support for his children does not end with the furnishing of mere necessities if he is able to afford more." (*Bailey* v. *Superior Court* (1932) 215 Cal. 548, 555 [11 P.2d 865].) "A child's 'need' for more than the bare necessities . . . varies with the parents' circumstances. [Citations.] [¶] Accordingly, where the supporting parent enjoys a lifestyle that far exceeds that of the custodial parent, child support must to some degree reflect the more opulent lifestyle even though this may, as a practical matter, produce a benefit for the custodial parent." (*In re Marriage of Catalano* (1988) 204 Cal.App.3d 543, 552 [251 Cal.Rptr. 370].)

---

[2]Reference was made to one other child of Johnson's.

[3]Tate did not seek review of the partial grant of the protective order.

In *White* v. *Marciano* (1987) 190 Cal.App.3d 1026 [235 Cal.Rptr. 779], the court addressed the question of whether "detailed evidence concerning a noncustodial parent's lifestyle and net worth [is] relevant in determining what amount of child support is 'reasonable' where the noncustodial parent stipulates that he has an income of $1 million per year and is able to pay any reasonable amount of child support." (*Id.* at p. 1031.) The court found:

"Clearly where the child has a wealthy parent, that child is entitled to, and therefore 'needs' something more than the bare necessities of life. It is also clear that the court is required to consider, in a general sense, the noncustodial parent's standard of living. However, . . . a trial court is not required to consider detailed lifestyle and net worth evidence in reaching a decision as to the needs of the child or the amount of support to be awarded.

"The standard of living to which a child is entitled should be measured in terms of the standard of living attainable by the income available to the parents rather than by evidence of the manner in which the parents' income is expended and the parents' resulting lifestyle. It matters not whether the . . . noncustodial parent miserly hoarded his $1 million per year income and lived the life of a pauper or whether he lived the life of a prince spending every cent of the available income.

". . . [E]vidence of detailed lifestyle and net worth [is] relevant only in those situations where the ability of the noncustodial parent to make adequate support payments may be affected by the unwise expenditure of income to the detriment of the supported minor. Where there is no question of the noncustodial parent's ability to pay any reasonable support order, . . . evidence of detailed lifestyle [is] irrelevant to the issue of the amount of support to be paid and thus protected from discovery and inadmissible in determining the support order." (190 Cal.App.3d at p. 1032.)

The uniform child support guidelines took effect in 1992 as Civil Code former section 4720 et seq. Under the guidelines, the interests of the child continue to be given "top priority." (§ 4053, subd. (e).) The guidelines set forth a complex algebraic formula for determining the appropriate amount of child support. (§ 4055.) The support amount rendered under the guideline formula "is intended to be presumptively correct in all cases . . . ." (§ 4053, subd. (k).) This presumption may be rebutted by evidence of various factors, including that "[t]he parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children." (§ 4057, subd. (b)(3).) Nonetheless, under section 4056, subdivision (a), "[t]o comply with federal law, the court shall state . . . whenever [it] is ordering an amount for support that differs

from the statewide uniform guideline formula . . . [¶] (1) The amount of support that would have been ordered under the guideline formula."[4]

*Estevez* v. *Superior Court, supra,* 22 Cal.App.4th 423, was decided after the uniform guidelines had taken effect. The issue presented was whether section 4056, subdivision (a)(1), of the guidelines had abrogated the rule of *White* v. *Marciano, supra,* 190 Cal.App.3d 1026.

In *Estevez,* the father provided a support "package" in excess of $14,000 a month for his two minor children. The mother was not dissatisfied with the total amount of support, but requested modification as to "the manner in which it was dispensed . . . ." (22 Cal.App.4th at p. 426.) In furtherance of her request, the mother sought discovery of all documents relevant to the father's income and lifestyle. (*Id.* at p. 427.) The father resisted discovery on the ground that he earned an extraordinarily high income and had agreed to pay whatever reasonable amount of support the court ordered. Accordingly, the father argued, he was entitled to the benefit of case law (e.g., *White* v. *Marciano, supra,* 190 Cal.App.3d 1026) precluding discovery of financial records in such a situation. (*Estevez* v. *Superior Court, supra,* 22 Cal.App.4th at p. 427.) The mother responded that the case law on which the father relied had been abrogated by the section 4056, subdivision (a)(1) requirement that a finding be made as to the amount of support required by the guideline formula before deviation from that formula is permitted. (22 Cal.App.4th at pp. 427-428.)

The *Estevez* court reviewed the relevant legal and legislative history and concluded that *White* v. *Marciano, supra,* 190 Cal.App.3d 1026, had not been abrogated by the uniform guidelines.[5] Thus, discovery of the father's financial records was "unnecessary, to say nothing of unduly burdensome and oppressive [citations] . . . because the information sought is irrelevant to the issue of the amount of child support to be paid by an extraordinarily high earner who has stipulated that he can and will pay any reasonable amount of child support." (22 Cal.App.4th at p. 431, italics & fn. omitted.) The court further noted that ". . . where the extraordinarily high earner resists detailed discovery of his or her financial affairs, the trial court may make such

---

[4]The uniform guidelines were enacted to comply with a provision of the federal Aid to Families with Dependent Children Act (42 U.S.C. § 667) that requires each state to have a single statewide guideline for child support. (§ 4050.)

[5]The court found that ". . . it appears the Legislature adopted the rule [of *White* v. *Marciano*] when it provided that the presumption of correctness of the amount of child support established by the guideline formula may be rebutted upon a showing that the parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the children's needs. [Citations.]" (*Estevez* v. *Superior Court, supra,* 22 Cal.App.4th at p. 431, fn. omitted.)

assumptions concerning his or her net disposable income, federal income tax filing status, and deductions from gross income as are least beneficial to the extraordinarily high earner, and thereby satisfy the requirements of Family Code section 4056." (22 Cal.App.4th at p. 431.)

In *McGinley* v. *Herman* (1996) 50 Cal.App.4th 936 [57 Cal.Rptr.2d 921], a case concerning the nature of the findings required for a child support order when the guidelines presumption has been rebutted due to a parent's extraordinarily high income, we did "not take issue with *Estevez*'s holding that, despite the seemingly mandatory language of section 4056, subdivision (a)(1), a determination of the guidelines amount may not be necessary in the case of an extraordinarily high earner. However, [we further noted that] it is significant that *Estevez* did not involve a dispute over the amount of child support, but rather the manner in which it was dispensed." (50 Cal.App.4th at p. 944.)

In the case at bench, we again see no reason to take issue with the central holding of *Estevez*. Nonetheless, we do not agree with the suggestion in *Estevez* that detailed financial information is necessarily *irrelevant* to the needs of a child with an extraordinarily high earning noncustodial parent. While refraining from an intrusion into the domain of trial court discretion, we can imagine that Taylor's needs might be assessed differently depending on whether Johnson earns $12 million a year instead of the $1 million income that he has conceded. Simply because the extraordinarily high earning parent is not constrained by the guideline formula, there is no reason to ignore the reality that great income discrepancies exist within the class of persons whose incomes are extraordinarily high and that this discrepancy can affect the child's needs. (See *In re Marriage of Catalano, supra,* 204 Cal.App.3d at p. 552.)

Because the amount of child support was not at issue in *Estevez,* there was no reason to address the tension between the extraordinarily high earner's desire for protection from discovery and the necessity that the trial court be presented with sufficient information upon which to intelligently assess the child's needs. The manner in which this tension might be resolved is suggested in the language of *Estevez* itself that "the trial court may make . . . assumptions . . . as are least beneficial to the extraordinarily high earner . . . ." (*Estevez* v. *Superior Court, supra,* 22 Cal.App.4th at p. 431.) We think it is necessary to go farther and change the permissive nature of this approach to one that is mandatory. The rationale of *Estevez* is that compliance with section 4056, subdivision (a)(1), is unnecessary because details of the high earner's income and lifestyle are irrelevant. This may have been true in *Estevez*. However, since Tate and Johnson have not agreed

as to the appropriate amount of child support for Taylor, it is only if the least beneficial assumptions are actually made against Johnson that detailed discovery of Johnson's income and assets is rendered truly irrelevant.

We next turn to the question, not addressed in *Estevez*, of how these least beneficial assumptions are to be made. Most certainly, they cannot be made in a vacuum but must be based on reason. The key financial factor in the guideline formula is net disposable income. (§§ 4055, subd. (b), 4059.) We see no particular impediment to the trial court's ability to make least favorable assumptions on the liability side of the net income equation. The more formidable challenge will be to make reasonable assumptions as to gross income.

During the trial court argument on the protective order, Tate asserted that Johnson's income is in the range of $12 million a year. Because the record was not developed as to the basis of this assertion, we can express no opinion on whether she possesses sufficient information to form the basis of a reasonable assumption. If she has such information, she would have no need under *Estevez* for any of the discovery propounded on Johnson.

On the other hand, Tate may not have information from which an assumption about anything over a $1 million annual income, unfavorable or not, may reasonably be based. In this regard, we note that what was discussed in *White* v. *Marciano* and *Estevez* were prohibitions against the type of *detailed* discovery sought in those cases and by Tate in this case, for which responses would be "unnecessary, . . . unduly burdensome and oppressive . . . ." (*Estevez* v. *Superior Court, supra,* 22 Cal.App.4th at p. 431.) However, discovery limited to only that information from which the least beneficial assumptions about Johnson's income may reasonably be made would not require such detail. We trust that in such a situation the parties with the assistance of the court will be able to fashion an appropriate approach to discovery.

Finally, we come to the order under review. The trial court permitted discovery of what it characterized as "lifestyle" information.[6] We are not aware of any cases which have drawn a distinction for purposes of discovery between information specific to financial affairs and information regarding lifestyle. Indeed, as noted in *White* v. *Marciano, supra,* 190 Cal.App.3d at

---

[6]Specifically, this included "all documents which evidence the amount of monthly living expenses" (except for bank statements, which the trial court included in the protective order) of Johnson, his spouse, and his minor children; "all documents relating to travel or lodging expenses" incurred or paid by Johnson on his own behalf and on behalf on his minor children; "all documents regarding [Johnson's] ownership of or interest in real property"; and all documents regarding Johnson's medical and life insurance.

page 1032, lifestyle should be evaluated based on the financial resources available to the payor parent, not whether he or she lives in a manner consistent with extravagance or with frugality. Moreover, even though the "lifestyle" categories that the court excluded from the protective order were limited in number, a complete response to the requested discovery would encompass much more detail than is likely necessary to provide sufficient information from which to reasonably base the requisite unfavorable assumptions. Accordingly, we hold that absent a showing of need for the detailed information requested, the protective order should have been granted as to those categories.

Our ruling does not necessarily mark the final resolution of the discovery question. As stated, if assumptions unfavorable to Johnson may reasonably be made in the absence of any discovery, no discovery should be granted. If the information available is insufficient to make such assumptions, some form of discovery is appropriate. Thus, we wish to make clear that in granting the instant writ relief to Johnson we are not precluding Tate from seeking discovery. Rather, our ruling is that discovery be allowed only to the extent necessary to make assumptions with respect to Johnson's income and lifestyle that are the least favorable to him.

### DISPOSITION

The petition for a writ of mandate is granted. Let a peremptory writ issue compelling respondent court to vacate its order of February 25, 1998; to issue a new order granting the motion for protective order; and to conduct further proceedings in conformance with this opinion. The parties are to bear their own costs in this proceeding.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.