EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Liza Ferrer García<br><br>    Demandante-Recurrida<br><br>              v.<br><br>Juan Alberto González<br><br>   Demandado-Peticionario | Certiorari<br><br>2004 TSPR 98<br><br>161 DPR ____ |

Número del Caso: AC-2002-32

Fecha: 15 de junio de 2004

Tribunal de Circuito de Apelaciones:

                    Circuito Regional II

Juez Ponente:

                    Hon. Jeannette Ramos Buonomo

Abogada de la Parte Peticionaria:

                    Lcda. María de Lourdes Guzmán


Abogada de la Parte Recurrida:

                    Lcda. Maritza Miranda López


Materia: Filiación y Alimentos



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Liza Ferrer García

    Demandante Recurrida

     v.

                           AC-2002-32

Juan Alberto González

    Demandado Peticionario

Opinión del Tribunal emitida por la Jueza Presidenta señora Naveira Merly

San Juan, Puerto Rico a 15 de junio de 2004

El caso ante nuestra consideración se inició mediante una petición de filiación y alimentos presentada por la Sra. Liza Ferrer García contra el Sr. Juan Alberto González el 26 de febrero de 1996. El Tribunal de Primera Instancia declaró con lugar la demanda y le impuso al señor González el pago de una pensión alimentaria provisional de dos mil quinientos dólares ($2,500.00) mensuales a favor del menor, Igor Alberto Ferrer. Inconforme con dicho dictamen, el señor González acudió al Tribunal de

Circuito de Apelaciones (en adelante Tribunal de Apelaciones) el cual confirmó la determinación de instancia.

Circuito de Apelaciones (en adelante Tribunal de Apelaciones) el cual confirmó la determinación de instancia.

El 14 de febrero de 2000 la señora Ferrer García presentó una moción para que se señalara vista para determinar la pensión alimentaria de su hijo. El foro de instancia ordenó al señor González exponer su posición en torno a la vista solicitada. Éste sostuvo que "$2,500.00 es una suma más que suficiente para un menor que aún no está en la escuela". Se opuso, además, a que la pensión fuera aumentada por entender que esto no era necesario. El 30 de agosto de 2000, presentó una moción en la que aceptaba tener capacidad económica para satisfacer una pensión alimentaria razonable, "por lo que no esta[ba] obligado bajo la Ley para el Sustento de Menores a descubrir sus ingresos". Luego de un extenso y azaroso trámite procesal en el que las partes presentaron varias mociones relacionadas con el descubrimiento de prueba, el tribunal de instancia determinó que tenía discreción para extender el período de descubrimiento de prueba entre las partes y que no podía acceder a dar por terminado el mismo en cuanto a una parte y mantenerlo en cuanto a otra. Resolvió, además, que permitiría el descubrimiento de prueba sobre el estilo de vida del señor González para tomarlo en consideración al determinar la pensión alimentaria del menor, ya que "esto no causa perjuicio alguno al demandado".

En vista de lo anterior, el foro de instancia le ordenó al señor González así como a Salomóm Smith &

Barney, Inc. y a cualquier persona o entidad en posesión de los documentos solicitados, lo siguiente:

> A que provean copia fiel y exacta de los estados bancarios mensuales para los años 1999, 2000, 2001 de todas las cuentas de cualquier naturaleza, incluyendo la cuenta número 720-25480-17 014 y cualesquiera otra de cheques o que permita el retiro de dinero mediante cualquier mecanismo por parte el demandado (o persona autorizada) para sus gastos, que exista o haya existido de forma individual o mancomunada a nombre Juan González. Conjuntamente con el estado mensual, deberá proveerse los cheques cancelados o la evidencia del uso dado al dinero retirado.

Inconforme con esta orden, el señor González presentó recurso de *certiorari* ante el Tribunal de Apelaciones en el que alegó que el tribunal de instancia erró al permitir este descubrimiento de prueba. Arguyó que conforme a la normativa establecida en María *Chévere etc. v. Salomón Levis Goldstein*, Op. de 15 de marzo de 2000, 2000 J.T.S. 56 (en adelante *Chévere v. Levis I*), cuando un padre alimentista acepta capacidad económica para satisfacer una pensión alimentaria razonable, es improcedente el descubrimiento de prueba dirigido a determinar la capacidad económica del alimentante para proveer alimentos. El Tribunal de Apelaciones confirmó el dictamen recurrido basándose en que "siendo el estilo de vida del demandado peticionario pertinente a la controversia de autos, entonces el uso del dinero que reflejen las cuentas de éste son indispensables para que el tribunal recurrido pueda emitir un dictamen justo

sobre la pensión alimentaria para el menor conforme a la doctrina vigente".

Inconforme, el señor González acudió ante este Tribunal alegando la comisión del siguiente error:

> Erró el Tribunal de Circuito de Apelaciones al interpretar que Chévere v. Levis II, tiene el alcance de obligar al alimentante que acepta capacidad económica a someterse a un descubrimiento de prueba donde tenga que entregar copia de todos sus estados de cuenta y cheques cancelados.

En síntesis, debemos resolver si en circunstancias en las cuales un padre no custodio acepta tener capacidad económica para proveer una pensión alimentaria de acuerdo a las necesidades razonables de sus hijos, éste tiene el deber de proveer copia de los estados mensuales de todas sus cuentas bancarias de cualquier naturaleza, a los fines de determinar su estilo de vida.

Con el beneficio de los argumentos de las partes, procedemos a resolver.

II

Sabido es que los casos de alimentos a hijos menores de edad están revestidos del más alto interés público. *Amadeo v. Santiago Torres*, 133 D.P.R. 785, 732 (1993); *López v. Rodríguez*, 121 D.P.R. 23, 28 (1988); *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 72 (1987). La Ley de Sustento de Menores, 8 L.P.R.A. sec. 501 *et seq.*, se aprobó con el propósito de "procurar que

los padres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de los hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias". 8 L.P.R.A. sec. 502. La aprobación de esta ley obedeció al problema apremiante que el Estado confrontaba, y aún confronta, referente al incumplimiento de las obligaciones morales por parte de uno o ambos padres de alimentar a sus hijos. En ocasiones esto ha conllevado que el propio Estado haya tenido que asumir dicha responsabilidad y la carga económica de alimentar a los menores.

Hemos reconocido que esta legislación va dirigida a aquellas personas que tienen la obligación de alimentar y que, por alguna razón, se niegan a cumplir con su responsabilidad. **Es precisamente la negativa a aceptar voluntariamente la capacidad económica la que activa el uso de los mecanismos dispuestos por la ley para descubrir la información relacionada a los ingresos y poder determinar así la capacidad económica del alimentante.** *Chévere v. Levis I, supra*.

El Art. 16 de la Ley para el Sustento de Menores, 31 L.P.R.A sec. 515, hace compulsorio el descubrimiento sobre la situación económica del alimentante en casos

relacionados con las pensiones alimentarias para poder fijar la cuantía a pagar. Establece, además, que "[e]n los procedimientos relacionados con pensiones alimenticias [sic], el descubrimiento sobre la situación económica del alimentante y alimentista será compulsorio". Sobre este particular, en *Chévere v. Levis I, supra*, establecimos lo siguiente:

> [E]l propósito de dicha legislación es descubrir la suficiencia económica del llamado a alimentar para, conforme a ello, establecer una pensión alimentaria. Es decir, la legislación se activa afirmativamente cuando el obligado a alimentar se negare a aceptar o esté en duda su capacidad económica. Ahora bien, **cuando este último fomenta la política del estado de "paternidad voluntaria" y admite capacidad económica, no es necesario que divulgue sus ingresos. Más aún, cuando un padre alimentante acepta que posee suficientes ingresos para pagar la pensión alimentaria que en derecho proceda a favor de sus hijos, promueve, con acierto, el interés público del bienestar de los menores y agiliza los procedimientos en cuanto a la otorgación de pensiones alimentarias.** Por consiguiente, cuando el padre alimentante acepta su capacidad económica, se hace innecesario el descubrimiento de prueba, según dispuesto por ley.[1] (Énfasis suplido.)

En la citada decisión establecimos que un alimentante queda exento del requisito de someter información sobre sus ingresos en la Planilla de Información Personal y Económica si acepta que tiene capacidad económica para proveer alimentos, quedando pendiente de resolver solamente las necesidades del

---

[1]    En este caso la señora Chévere le cursó al señor Levis un aviso de deposición dirigido a descubrir su

alimentista para así fijar la pensión alimentaria del mismo. Establecimos, además, que esto no exime al alimentante de descubrir cualquier prueba que proceda de acuerdo a las necesidades particulares de los menores y conforme a la particular condición socieconómica del padre. Ahora bien, cuando el alimentante acepta tener capacidad económica, luego no puede impugnar la pensión que haya sido fijada conforme a las necesidades razonables del alimentista alegando que él no tiene capacidad económica para pagarla.

Por otra parte, en *Chévere v. Levis II*, Op. de 3 de noviembre de 2000, 2000 J.T.S. 175, secuela del caso *Chévere v. Levis I, supra*, nos tocó determinar cuáles criterios debe considerar un tribunal para imponer una pensión alimentaria, cuando el llamado a alimentar acepta capacidad para pagar la cantidad que se le imponga y, por lo tanto, no tiene la obligación de descubrir sus fuentes de ingresos para que se pueda determinar su capacidad económica.

En cuanto a las reglas que gobiernan el derecho probatorio en este tipo de caso, establecimos lo siguiente:

> La Regla 10(H) de Evidencia, 32 L.P.R.A. Ap. IV, dispone que cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia indirecta o circunstancial. La evidencia circunstancial es intrínsicamente igual a la evidencia directa. La norma de derecho con respecto a la evidencia

capacidad económica y **estilo de vida** a los fines de fijar la pension alimentaria para sus hijos.

circunstancial es que procede que se dé por probado un hecho a base de una inferencia, cuando hay una relación racional entre ésta y el hecho básico probado. (Citas omitidas.)

A la luz de lo anterior, resolvimos que un tribunal no está limitado a considerar únicamente evidencia sobre gastos e ingresos, ya fuere testifical o documental. Puede utilizar, además, evidencia circunstancial que le permita inferir, como parte de las necesidades del menor, el estilo de vida a que éste tiene derecho a tenor con la capacidad económica y estilo de vida de su padre o madre.[2]

El estilo de vida es todo lo que concierne a obligaciones legítimas preexistentes o bienes adquiridos que no cualifican como gastos necesarios y que el nivel socio económico le permite a la persona incurrir o

---

[2] En ese caso, a modo ilustrativo, citamos *Estévez v. Superior Court*, 22 Cal. App. 4th 423, 27 Cal. Rptr.2d 470, 475-76 (Cal.App. 2 Dist. 1994), donde la madre que tenía la custodia del menor requería del padre no custodio documentos relacionados con sus ingresos, gastos y activos. Solicitaba, entre otras cosas, estados de cuentas bancarias, informes de ingresos, talonarios de cheques, regalos, comisiones, acciones y dividendos. El tribunal concedió la orden protectora al padre no custodio, señalando que "where the extraordinarily high earner resists detailed discovery of his financial affairs, the trial court may make such assumptions concerning his or her net disposable income, federal income tax filing status, and deductions from gross income as are least beneficial to the extraordinarily high earner ....". Resolvió, además, que "calculation of amount of support called for by child support guidelines [is] unnecessary to resolve amount of child support to be paid by extraordinarily high earner who stipulated that he could and would pay any reasonable amount of child support".

adquirir.[3]    Tanto  nuestra  jurisprudencia  como  la  de algunos estados de los Estados Unidos ha expresado que la  pensión  alimentaria  debe  estar  basada  en  las necesidades de los menores, consideradas éstas a la luz de  todas  las  circunstancias  del  caso,  incluyendo  el estilo de vida de los padres.[4]  En virtud de lo anterior, en *Chévere v. Levis II, supra*, establecimos que "dicha jurisprudencia  ha  enfatizado  claramente  que  las necesidades  razonables  de  un  menor  cuyos  padres  son ricos pueden incluir cosas que pudieran ser consideradas como  frívolas  por  padres  de  menos  recursos  económicos. Las necesidades y los lujos son términos relativos".

En  el  caso  de  autos,  la  señora  Ferrer  García sostiene  que  la  documentación  solicitada  es  un  medio menos oneroso que otros para descubrir al menos "algo" del estilo de vida del señor González y sus otros hijos.[5] No  le  asiste  razón.   Permitir  que  el  señor  González descubra  la  prueba  solicitada  por  la  señora  Ferrer García sería permitir que éste someta información sobre sus ingresos, dejando sin efecto la doctrina establecida en *Chévere v. Levis I*, *supra*.  **Habiendo el alimentante aceptado que tiene capacidad económica para proveer una pensión alimentaria razonable al menor, no es necesario**

---

[3]    *Chévere v. Levis II, supra,* nota 11.

[4]    Véase *Geberin v Geberin*, 172 Ind. App. 255, 360 N.E. 2d 41, 46 (1979), *Rohn v. Thuma*, 408 N.E. 2d, 578, 582 (Ind. App. 1980), *Halum v Halum*, 492 N.E. 2d 30, 33 (Ind. App 3 Dist. 1986).

**brindar información adicional para determinar dicha capacidad. El estilo de vida de un alimentante puede ser determinado o inferido de su capacidad económica, sin necesidad de aportar prueba sobre si el alimentante vive o no de manera consistente con la misma. Un alimentante no puede privar a sus hijos de los alimentos que necesiten, independientemente de que teniendo vastos recursos económicos, decida mantener un estilo de vida simple, moderado, quizás hasta austero, o que por el contrario, careciendo de estos medios económicos mantenga un estilo de vida pomposo o extravagante. Cuando la capacidad económica del alimentante no está en controversia, como en el caso de autos, no procede descubrimiento de prueba alguno respecto a su estilo de vida.**[6] En el caso de autos, el señor González ha aceptado <u>reiteradamente</u> tener capacidad económica, por lo tanto, sólo restaría determinar las necesidades del menor y la capacidad económica de la madre para fijar la cuantía que viene obligado a pagar por concepto de alimentos.

Por los motivos antes expuestos, revocamos el dictamen emitido por el Tribunal de Apelaciones y devolvemos el caso al foro de instancia para la

---

[5]    Alegato de la parte recurrida a la pág. 18.
[6]    Véase *General Electric v. Concessionaries*, Inc., 118 D.P.R. 32, 42-43 (1986).

continuación de los procedimientos a tenor con lo aquí resuelto.


MIRIAM NAVEIRA MERLY
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Liza Ferrer García

    Demandante Recurrida

       v.

Juan Alberto González,                                    AC-2002-32

    Demandado Peticionario


SENTENCIA


San Juan, Puerto Rico a 15 de junio de 2004


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se revoca la sentencia dictada por el Tribunal de Apelaciones, y se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí expuesto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López, concurre en parte y disiente en parte de la Opinión emitida en el presente caso, proponiéndose emitir una Opinión concurrente y disidente en etapa de reconsideración, en la eventualidad de que la parte demandada peticionaria oportunamente solicite la misma. El Juez Asociado señor Hernández Denton concurre con la Opinión del Tribunal por entender que una vez el padre alimentista admite su capacidad económica para satisfacer una pensión alimentaria razonable, no procede descubrir prueba sobre su estilo de vida o cualquier otro factor

CC-2002-32
15

dirigido a determinar su capacidad económica. El estilo de vida del alimentista es uno de los factores a considerarse según la ley y la jurisprudencia cuando precisamente la capacidad económica del obligado a proveer alimentos está controversia y, por lo tanto, la autoridad adjudicadora tiene que precisar el ingreso neto correspondiente. Véase, Art. 2 de la Ley Especial de Sustento de Menores, Ley Núm. 86 de 17 de agosto de 1994, 8 L.P.R.A. sec. 501(17); Argüello López v. Argüello García, res. el 31 de agosto de 2001, 2001 TSPR 124; López v. Rodríguez, 121 D.P.R. 23 (1988).


                              Patricia Otón Olivieri
                         Secretaria del Tribunal Supremo