Filed 8/10/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re the Marriage of JENNIE HEARN and ROCKFORD HEARN. | |
| JENNIE (HEARN) HOOKER, Respondent, v. ROCKFORD HEARN, Appellant. | A162932 (Marin County Super. Ct. No. FL1601048) |

Rockford Hearn appeals from an order awarding his former wife $25,000 in need-based attorney fees under Family Code section 2030. He argues that the trial court erred in denying his request for an evidentiary hearing and in awarding fees without considering the factors specified in the applicable statutes. He also argues that there is no evidence that he can comply with the court's order. We shall affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 7, 2021, Jennie Hooker (Jennie) filed a request for an order that Rockford Hearn (Rocky) pay a portion of the attorney fees she was incurring in response to Rocky's appeals from orders in the underlying marital dissolution case.[1] At that time, two appeals were pending before this

___

[1] In referring to the parties by their first names, we follow the convention adopted by the parties in their briefs.

1

court:  Rocky's appeal from the judgment of dissolution (*In re Marriage of Hearn* (Aug. 30, 2021, A152323) [nonpub. opn.] (*Hearn I*)), and his appeal from a postjudgment order that the trial court made to enforce previous orders requiring him to pay $15,000 toward Jennie's attorney fees and divide his 401(k) plan in half with her, with which Rocky had not complied.  (*In re Marriage of Hearn* (Aug. 30, 2021, A155957) [nonpub. opn.] (*Hearn II*).)

A.    *Request for Order, Opposition, Reply and Supplemental Opposition*

In her January 2021 request for order, Jennie sought $45,000:  $35,000 to pay her appellate attorney for his work in *Hearn I*, and $10,000 to pay her trial counsel for work trial counsel had done in connection with the contested preparation of a settled statement for *Hearn I*.  In support of the request, Jennie declared that she had been out of work since March 2020 because of the COVID-19 pandemic, her unemployment benefits had been exhausted, and she did not work during the week because she was taking care of the couple's two children.  She stated that her current income came from trust distributions, which were made at the discretion of the trustee, and that although she was currently receiving $7,000 per month, she had been advised that the distribution may be reduced by $1,000 because of reduced income to the trusts.  She stated that her father co-owned her home and was making 10 percent of the mortgage payments.  She stated that Rocky was employed full time as an attorney and they shared the cost of health insurance for the children through his health plan.  And she stated that her income was not enough to cover the fees and costs arising from Rocky's appeal, as well as her living expenses, which amounted to about $8,600 per month as shown on her income and expense declaration.

Jennie attached bills from her appellate counsel amounting to almost $60,000 for his work on *Hearn I* from August 2017 through November 2020;

she declared that she had paid the bill with funds that were a loan from her father. She also submitted a declaration from her appellate counsel, who estimated that his fees for the remaining work on *Hearn I* would be $35,000. Jennie also attached invoices from her trial counsel for her work in connection with the settled statement in *Hearn I*, which amounted to over $20,000. Jennie stated that she currently owed trial counsel $4,500, having paid part of the fee from her own assets and with borrowed funds, and requested a contribution of $10,000 toward those fees from Rocky. She stated that Rocky was representing himself in the appeals; that she believed he was "making his best efforts to wear [her] down"; and that his "multiple requests" for extensions of time caused her added expense. Jennie's request was set for a hearing on February 17, 2021.

On February 4, 2021, Rocky filed a responsive declaration in which he stated he was currently unemployed and had no income or assets to pay any portion of Jennie's fees.[2] He further stated that he had been unable to pay for a family law attorney for himself since 2017; and that Jennie had over $1 million in reported financial assets and "significant trust income."

In her reply declaration Jennie stated that although Rocky claimed to be unemployed, he provided no proof of termination or indication of any severance. She also stated that he had failed to attach his most recent paystubs to his income and expense declaration. She stated that Rocky had told her he expected to be working by March 1 because he needed to work to pay his expenses, which, according to his income and expense declaration, were over $8,800 per month. She further stated that her primary asset was the equity in her home, which was illiquid; that she still had no earned income; and that she had reduced her expenses. And she reduced her request

---

[2] Subsequent dates are in 2021 unless otherwise stated.

for fees, asking the court to order Rocky to contribute to her attorney fees and costs in the amount of $40,000 (rather than $45,000), to be paid $1,000 per month starting March or the month after he begins employment with a new company, whichever is later.

Rocky filed a supplemental declaration the day before the scheduled hearing, in which he stated that he had been "unexpectedly discharged" from his employment on February 2 and that he had received his final paycheck and his January paystubs after he submitted his responsive declaration. He attached copies of the final paycheck and recent paystubs.

At the February 17 hearing, the court continued the hearing to April 7. Rocky was ordered to file additional information by March 23, including papers he alluded to during the hearing that had not been filed with the court, and written confirmation that he was involuntarily terminated and that he was not receiving any severance pay. The court authorized Jennie to file a reply.

B.    *Further Submissions to the Trial Court*

Rocky filed a second supplemental declaration with attachments that included a February 17 letter from his employer to him "confirm[ing] that your employment . . . terminated on 02/02/2021 [and] that you did not voluntarily resign your position, and that the firm did not provide severance to you upon separation from employment." He also attached a notice from the Employment Development Department stating that he had filed for unemployment benefits on February 7 and that in his claim he gave the following reason that he was no longer working for his most recent employer: "unable to work required hours due to need to care for children due to COVID-19." And he attached his most recent tax return, which was for 2019; his COBRA election notice; and an updated income and expense declaration.

4

In her reply declaration, filed on April 1, Jennie stated that she was still unemployed; that she had left her previous job due to concerns for COVID-19 and a lack of work; that she no longer qualified for unemployment; that she had received a stimulus payment, and believed that Rocky had also received one; and that she was training to become a real estate agent.[3] She reported that Rocky had told her that he expected to have a job by April. She again reduced her request, this time asking the court to order Rocky to pay her a total of $20,000 toward her fees by means of monthly payments starting when he secured employment, in amounts of $750 or $500, depending upon his salary. Jennie also filed points and authorities supporting her fee request, as well as a supplemental declaration from her trial counsel that included information about fees Jennie had incurred in February and March in connection with the appeals, which amounted to over $20,000. Jennie relied on *In re Marriage of Sullivan* (1984) 37 Cal.3d 762 (*Sullivan*) to argue that the court should make a fee order based on Rocky's earning capacity, and that Rocky's current income, of zero, did not reflect his ability to earn, which was evidenced by his earnings in 2020.

On April 5, Rocky filed a third supplemental declaration, in which he objected to Jennie's most recent submissions on the grounds that they made new legal arguments and new requests for orders. He asked that they be stricken or that the April 7 hearing be continued for him to provide a "meaningful response and opposition." And he argued that Jennie's request that he make payments over time starting at an unspecified future date was contrary to applicable statutes.

---

[3] Jennie stated that she was pursuing a career in real estate sales because she felt that would provide a "a more stable future course for me," compared to her former work as an esthetician.

5

C.    *April 7 Hearing and Order Awarding Fees*

At the April 7 hearing, the court confirmed it was aware that the case "has been hotly contested," and stated several times that it had read all the parties' papers. Rocky argued that Jennie's most recent declaration contained "any number of alleg[ation]s, which were both untrue and can be established as untrue with communications," and asked that if the court considered those declarations it continue the hearing "ideally, for an evidentiary hearing." He continued, "Specifically, there's allegations that imply—I don't have it in front of me but imply that I am somehow pursuing this litigation—I believe Jennie said that it was, quote, 'fun' for me or intentionally just to make her—"[4] The court pointed out that what Jennie had said was that he had told her that he enjoyed representing himself. Rocky responded that wasn't accurate and there was correspondence over the past few months in which he tried to convince Jennie to resolve the matter informally. He concluded that if the court was going to base its order on Jennie's allegation, he needed "time to properly respond."

Rocky also argued that additional financial information from Jennie was required to support her request for fees, including tax returns, confirmation of her unemployment, information regarding her retirement account, and information about how much she has paid in fees to date and how she paid for those fees. He said he had requested this information from Jennie's counsel in an email in connection with proceedings concerning a prior fee award; had received no responses; and the court had determined it was not necessary at that time. And he argued that *Sullivan*, the case on

---

[4] Apparently, Rocky was referring to the statement in Jennie's most recent declaration that, "Rocky has told me in no uncertain terms he will continue to fight me because it is easy for him to be his own lawyer and he enjoys it."

which Jennie had relied in her recent submission, did not support her request.

The court took the matter under submission, and later that day issued a written order. As an initial matter, the court denied the requests in Rocky's third supplemental declaration to strike Jennie's reply submissions or continue the hearing. The court also denied Rocky's "request for a continuance so that he can conduct discovery and, later, an evidentiary hearing," which was made for the first time at oral argument, because "this matter has been so exhaustively briefed that the court finds good cause to decline to grant the improper request." The court further stated that it did not believe that an evidentiary hearing would provide "any information that could (and should) have been included in the parties' written submissions."

The court then observed that although Jennie's fee request did not refer to a particular statutory section, it rested on her alleged need for a fee award and Rocky's alleged ability to pay, and was therefore based on Family Code sections 2030 through 2032.[5]

The court reviewed the evidence before it, and found that Jennie had equity in her home but no significant liquid assets, monthly living expenses of about $8,600, monthly unearned trust income of $7,000 per month, and $86,000 in debt, of which $75,000 was owed to Jennie's father for which no payments were currently being made. Jennie had recently been receiving unemployment income in the amount of about $1,700 per month, which she was no longer receiving but was reapplying for.

As to Rocky, the court found that he had earned an average of $13,101 per month in 2020, and he was currently unemployed. He was an attorney

---

[5] Citations to statutes are to the Family Code. Citations to rules are to the California Rules of Court.

7

and member in good standing of the state bar, and lived in Belvedere, California.  The court noted an apparent discrepancy between the letter from Rocky's employer, which stated that Rocky did not voluntarily resign, and Rocky's claim for unemployment, in which Rocky stated that he was no longer working because he was unable to work required hours because of COVID-19.  The court further noted that Rocky did not disclose his current employment prospects in view of the fact that schools had reopened, and that according to Jennie, he had said he expected to be employed by March.  Rocky reported monthly living expenses of about $8,900 and no significant debt. His current COBRA insurance coverage for himself and the children cost about $1,000 per month.

The court found that Rocky was self-represented; had "vigorously prosecuted this case without the expense of retained counsel"; and had filed two appeals that were pending. The court found that Jennie had to retain counsel to represent her at trial and on appeal.

The court concluded that both Rocky and Jennie had some ability to contribute to Jennie's fees and costs.  On that basis, the court ordered Rocky to pay Jennie $25,000 on account of her attorney fees and costs of suit, as described in her request for order, by paying $2,000 per month beginning on June 1 until the award was paid in full.  The court ordered that any portion of the award that was not paid when due would bear interest at the statutory rate.  Jennie and her attorneys were to determine how to allocate the award between her trial and appellate counsel.

Rocky filed a motion to "vacate, reconsider, modify and/or provide other relief from" the April 7 order.  The motion was denied, and this appeal followed.

## DISCUSSION

A.  *Disentitlement*

After the record was filed, Jennie moved to dismiss the appeal based on the disentitlement doctrine.  We denied the motion without prejudice to Jennie raising the issue in her appellate brief, which she has done.

Under the doctrine of disentitlement, an appellate court has the " 'inherent power . . . to dismiss an appeal by a party that refuses to comply with a lower court order.' " (*Findleton v. Coyote Valley Band of Pomo Indians* (2021) 69 Cal.App.5th 736, 756 (*Findleton*).  As our Supreme Court has explained, "A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state." (*MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277 (*MacPherson*).)  The doctrine may be applied in the absence of a formal judgment of contempt:  all that is required is a party's willful obstruction of, or failure to comply with, trial court orders.  (*Findleton*, *supra*, 69 Cal.App.5th at p. 756.)  Dismissal under the disentitlement doctrine is not punishment for contemptuous acts, but is instead an "equitable tool" that allows an appellate court to induce compliance with a presumptively valid order, and is not lightly applied. (*Ibid.*)  The doctrine "must be applied in a manner that takes into account the equities of the individual case" (*People v. Puluc-Sique* (2010) 182 Cal.App.4th 894, 901), and it " 'is particularly likely to be invoked where the appeal arises out of the very order (or orders) the party has disobeyed.' " (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265 (*Ironridge*).)

Jennie argues that Rocky's appeal should be dismissed because Rocky is currently in violation of our orders in *Hearn I* and *Hearn II* that he pay her

9

costs on appeal, as well as the attorney fee order that is subject of this appeal.[6]

Rocky concedes that he has not forwarded to Jennie the $1,648.80 in costs that she was awarded in connection with *Hearn I* and *Hearn II*. He claims that he is entitled to reimbursement from Jennie for amounts he has advanced to cover their children's medical expenses, which exceed the costs Jennie was awarded on appeal. He has also offered to forward payment of the appellate costs and then independently seek reimbursement of the medical expenses. Jennie does not deny any of this; she says only that Rocky has no right to claim an offset that was not allowed by the court.

As to compliance with the attorney fee order that is challenged in this appeal, which is of particular importance in our analysis (*Ironridge, supra*, 238 Cal.App.4th at p. 265), Rocky admits that he has not made any payments, but argues that he remains unemployed, he is unable to make payments, and he has not violated the court's order, which provides that interest accrues at the statutory rate on unpaid balances. Although Jennie contends that Rocky is not in compliance with the challenged order, her contention is undercut by her contention that the order established a "reasonable payment schedule" that "allows Rocky to defer payment and merely pay statutory interest."

In these circumstances, we do not conclude that Rocky has willfully obstructed or failed to comply with the trial court orders at issue in this appeal (*Findleton, supra*, 69 Cal.App.5th at p. 756), and we decline to dismiss his appeal under the disentitlement doctrine.

---

[6] We discount Jennie's argument that dismissal is appropriate in light of Rocky's failure to comply with other previous trial court orders, because Jennie does not claim that Rocky currently "stands in an attitude of contempt" toward those orders. (*MacPherson, supra*, 13 Cal.2d at p. 277.)

B.      *Denial of Request for Evidentiary Hearing*

Rocky argues that the trial court violated section 217 and rule 5.113(b) by refusing to grant his request for an evidentiary hearing and by failing to make findings justifying the refusal.  He further contends he was prejudiced by being deprived of the opportunity to cross-examine Jennie regarding her allegations as to his earning capacity.

1.      *Applicable Law and Standard of Review*

Section 217 provides that as a general matter, in a hearing on motion brought under the Family Code, "the court shall receive any live, competent testimony that is relevant and within the scope of the hearing."  (§ 217, subd. (a).)  The court, however, "may make a finding of good cause to refuse to receive live testimony and shall state its reasons for the finding on the record or in writing."  (§ 217, subd. (b).)  Rule 5.113 sets forth factors for the court to consider in making a finding of good cause to refuse to receive live testimony under section 217, including "[w]hether material facts are in controversy," "[w]hether live testimony is necessary for the court to assess the credibility of the parties or other witnesses"; "[t]he right of the parties to question anyone submitting reports or other information to the court"; and "[a]ny other factor that is just and equitable."  (Rule 5.113(b).)  The court must state its reasons for a good cause finding on the record or in writing, and "is required to state only those factors on which the finding of good cause is based."  (Rule 5.113(c).)

We review the trial court's determination of good cause for abuse of discretion.  (*Laraway v. Sutro & Co., Inc.* (2002) 96 Cal.App.4th 266, 273.)

2.      *Analysis*

We are not persuaded by Rocky's argument that the findings made by the trial court in support of its denial of his request for an evidentiary

11

hearing do not constitute good cause and do not reflect consideration of the factors set forth in rule 5.113(b).

To begin, the right to live testimony under section 217 may be forfeited, and the record here arguably shows that Rocky forfeited his right to live testimony by not asking to testify or to cross-examine Jennie, or anyone else, in the trial court. (See *In re Marriage of Cohen* (2023) 89 Cal.App.5th 574, 584 [discussing forfeiture of right to live testimony].) In his third supplemental declaration, filed before the April 7 hearing, Rocky did not ask to present live testimony. He objected to the April 1 declarations solely on the ground that they raised new legal issues, and he asked that if the declarations were to be considered he be allowed to provide a further response. Nor did Rocky ask for live testimony at the April 7 hearing. In asking for a continuance followed by an evidentiary hearing, Rocky stated that he could provide "communications" and "documentation" to refute Jennie's purported implication that he was pursuing litigation to harass her. And he stated that he wanted further documentation from Jennie about her finances, while conceding that he had not requested the information in connection with the pending request for order.

Rocky's reliance on *In re Marriage of Swain* (2018) 21 Cal.App.5th 830, does not help him. In *Swain*, the husband appealed from an order denying his motion to terminate spousal support. (*Id.* at p. 832.) At the hearing, he objected to the wife's declaration, "raising [his] due process rights and his right to cross-examine" the wife. (*Id.* at p. 834.) The trial court nevertheless relied on the declaration. (*Id.* at p. 835.) The Court of Appeal reversed, holding that where "the opposing party seeks to exclude the declaration *on the ground that he or she is unable to cross-examine the declarant . . .* the opposing party's objection not only seeks to exclude hearsay evidence, but

12

also amounts to an assertion of the party's right under section 217 to 'live competent testimony that is relevant and within the scope of the hearing.'" (*Id.* at p. 241, italics added.) But here, unlike in *Swain*, Rocky did not seek to exclude Jennie's April 1 submissions on the ground that he needed to cross-examine her. Instead, he sought to exclude them unless the court would also consider additional documentary evidence. Rocky simply wanted the opportunity to produce more documentary evidence for the court to consider.

Assuming that in requesting an evidentiary hearing Rocky properly invoked his right to live testimony, we conclude that the trial court made a sufficient finding of good cause. At the outset of the April 7 hearing, the trial court stated that it had reviewed the parties' submissions, and was familiar with the case and the issues. Against this background, and Rocky's failure to ask to present live testimony or cross-examine any witnesses, the trial court found that the matter had been "so exhaustively briefed" that an evidentiary hearing would not give the court information that could have, and should have, been included in the written submissions. Implicit in this finding is the court's determination that the material facts were not in controversy (rule 5.113(b)(2)); that live testimony was not necessary for the court to assess the parties' credibility (rule 5.113(b)(3)); and that the parties had been given ample opportunity to present their cases and that the court was in possession of all the information it required to rule on the request. (Rule 5.113.(b)(6) [requiring the court to consider "[a]ny other factor that is just and equitable"].) The court was not required to set forth its conclusions as to all of the factors listed in rule 5.113(b); it was required only to state the facts upon which the finding of good cause was based. (Rule 5.113(c).) In these circumstances, the trial court made the required findings and did not abuse its discretion in finding good cause. (See *In re Marriage of Binette* (2018) 24

13

Cal.App.5th 1119, 1132 [no error in refusing to receive live testimony where "[t]he court's confirmation that it had thoroughly read the record in the case, along with the absence of any demand for live testimony, sufficiently indicates that it considered the pertinent factors and found that material facts were not in controversy and live testimony was unnecessary"].)

In any event, Rocky fails to show that he was prejudiced by the denial of his request for an evidentiary hearing. Although he contends on appeal that he was harmed by being deprived of the ability to cross-examine Jennie regarding allegations she made in her April 1 declaration, he does not explain how his cross-examination would have related to the issues on which the trial court based its fee order. (*In re Marriage of Deamon* (2019) 35 Cal.App.5th 476, 484 [failure to make good cause finding under section 217 is harmless where appellant does not show how live testimony would affect the issues on which the court based its order].)

Rocky argues that in her April 1 declaration Jennie falsely stated that the range of his annual income in the last few years of their marriage, which ended in 2015, was similar to the income reflected on his 2020 year-end paystub, and that if he had been able to cross-examine her, he would have refuted her allegations concerning how much he earned in the past. But the trial court did not base its ruling on how much Rocky earned during the marriage: to the extent it considered his earning capacity, it based its ruling on the amount that Rocky earned in 2020, as shown on his paystub, and Rocky concedes that the figure on the paystub is accurate.

Rocky also states that in her April 1 declaration Jennie for the first time provided information regarding her employment, and that he was prejudiced by not being able to cross-examine Jennie about whether her unemployment was voluntary, when she expected to become employed, and

14

the income she expects to earn "if/when Jennie begins working as a real estate agent." But contrary to Rocky's assertion, Jennie provided information about her employment in the January declaration she submitted with her request for order. There she stated that she had been out of work for almost a year, that she had collected unemployment, but it had run out, and that she did not expect to find work until later in the year. She provided further details in the income and expense declaration she submitted in January with her request for order: Jennie stated that she returned to school in January 2020 for nursing prerequisites and reduced her work hours; then in March 2020 she lost her job due to COVID-19 and received unemployment benefits until October 2020; and she planned to reapply for benefits in March if she was still unable to find work. If Rocky believed that he needed to cross-examine Jennie about these issues, he could have so informed the trial court well before the April 7 hearing—including at the February 17 hearing—but he never did. Nor did he ask to cross-examine her about the issues on April 7. And Rocky does not explain how speculation about what Jennie might have earned if at some point she began working as a real estate agent would have had any bearing on the trial court's decision.

Finally, Rocky suggests that an evidentiary hearing would have provided him with an opportunity to oppose two "new/revised requests" made in Jennie's April 1 submissions. The "requests" are that the fee award be based on Rocky's earning capacity rather than his current income, and that the fees be paid in monthly installments. In fact, Rocky had the opportunity to address those issues, and did so. The issue of making payments in monthly installments was not new: Jennie first raised it in her February 8 declaration, and Rocky eventually addressed the issue in his third supplemental declaration. And Rocky raised legal arguments concerning the

15

propriety of considering his earning capacity in his third supplemental declaration and at oral argument. But in any event, as Rocky recognized in the trial court, his objections to these requests raised issues of law, not factual issues on which testimony could be brought to bear.

C.    *Fee Award*

Rocky argues that in making the fee award, the trial court abused its discretion by failing to make the findings required by section 2030. He also argues that the award must be reversed because there is no evidence of his ability to pay Jennie's fees.

1.    *Applicable Law and Standard of Review*

Sections 2030 and 2032 authorize the trial court in a dissolution action to "award fees and costs between the parties based on their relative circumstances in order to ensure parity of legal representation in the action." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 974, fn. omitted (*Falcone*).) "When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs." (§ 2030, subd. (a)(2).) The court must make explicit findings on the issues listed in section 2030, subdivision (a)(2). (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050.)

A fee award is limited to the amount that is "reasonably necessary" to maintain or defend the proceeding (§ 2030, subd. (a)(1)), and must be "just and reasonable under the relative circumstances of the respective parties." (§ 2032, subd. (a).) In determining what is just and reasonable under the

16

circumstances, section 2032, subdivision (b), directs the court to consider the circumstances listed in section 4320, which include the parties' earning capacity (§ 4320, subds. (a), (c)), as well as a catch-all that encompasses "[a]ny other factors the court determines are just and equitable."[7] (§ 4320, subd. (n).) Section 2032 further provides that the fact that a party requesting a fee award has resources to pay the party's own fees does not bar an order that the other party pay all or part of the fees requested, and that "[f]inancial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (§ 2032, subd. (b).) Among other things, the court may consider the party's litigation tactics in making an award under section 2030. (*Falcone*, *supra*, 203 Cal.App.4th at p. 975.)

" 'On appeal, we review an attorney fee award under section 2030 for an abuse of discretion.' [Citation.] . . . [Citation.] Applying the abuse of discretion standard, we consider de novo any questions of law raised on appeal but will uphold any findings of fact supported by substantial evidence. [Citation.] The trial court's order 'will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made.' " (*In re Marriage of Smith* (2015) 242 Cal.App.4th 529, 532.)

2. *Analysis*

We are not persuaded by Rocky's argument that the trial court failed to make the required findings to support a need-based fee award. The court found that Jennie had monthly income of about $7,000 per month and

---

[7] Section 4320 sets forth the factors to be considered by the court in ordering spousal support. The trial court is not required to expressly address the section 4320 factors. (*In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 602-603.)

17

expenses of about $8,600, and that Rocky, who had average monthly income of about $13,000 and expenses of about $8,800 in 2020, was currently unemployed. However, Rocky was a member in good standing of the state bar and was looking for new employment. The court also found that Rocky was "vigorously" representing himself without incurring the expense of retaining counsel, and that Jennie had to retain counsel "at the going rate" to represent her in the trial court and in responding to Rocky's appeals. These are explicit findings that an award of fees to Jennie under section 2030 is appropriate, because Rocky's income in 2020 was considerably higher than Jennie's; her expenses exceeded her income; and although Rocky's and Jennie's expenses were otherwise comparable, Rocky had access to legal representation without paying attorney fees and Jennie did not. (§ 2030, subd. (a)(2).) The court did not require Rocky to pay all of Jennie's fees and costs: rather, the court found that Rocky was able to pay for the legal representation of both parties insofar as he paid nothing for his own representation and had the ability to contribute the fees and costs that Jennie outlined in her request for order. (*Ibid.*) Thus, the court made the findings required by statute, and on the basis of these findings, the court ordered Rocky to pay $25,000 toward Jennie's fees and costs.

Rocky complains that the trial court did not make findings as to the "amount of fees Jennie has paid to date, how she paid for them and where the funds came from," or as to Jennie's employment prospects, but he cites nothing to suggest that the trial court was required to make explicit findings on these points. Rocky does not dispute the extensive evidence that Jennie provided as to the fees she had incurred in connection with Rocky's appeals through March 2021 (amounting to over $100,000), and the amounts that she had paid toward those fees (approximately $75,000), and how she had made

18

those payments through her own assets and funds borrowed from her father. Rocky does not argue that the fees Jennie incurred were excessive or unreasonable. And he does not dispute that Jennie provided evidence that she had received unemployment benefits, which had expired; that she was planning to reapply for them; and although she was currently unemployed she was studying for the real estate sales agent exam and was training to become a realtor's assistant. Nothing in the record suggests that the trial court failed to consider the evidence before it. To the contrary, the court stated numerous times that it had reviewed the extensive submissions from both parties.

Nor are we persuaded by Rocky's arguments that the trial court's finding that he had ability to pay a portion of Jennie's fees is not supported by substantial evidence.

Rocky argues that compliance with the court's order is impossible even if we assume that the trial court correctly found that his prospective monthly income is the same as his average monthly income from 2020. The argument rests on Rocky's calculation that, even with a gross monthly income of over $13,000, his monthly "disposable income" would be only about $825, and his assumption that any fee award would have to be paid from such "disposable income." He concludes that his disposable income does not allow for monthly payments to Jennie of $2,000 to cover her attorney fees. Rocky's calculation has no basis in the law. He relies on the legal principle stated in *Johnson v. Superior Court* (1998) 66 Cal.App.4th 68, that "[t]he key financial factor in the [child support] guideline formula is net disposable income," while disregarding the immediately following citation in that case to section 4059 of the Family Code, which specifies how disposable income is to be calculated from gross income. (*Johnson* at p. 75.) Assuming for purposes of this appeal

19

that a fee award must be paid from net disposable income, Rocky's argument is meritless because his calculation of his disposable income bears no resemblance to the formula set out in section 4059. In calculating his disposable income, Rocky deducts from his gross income his self-reported monthly expenses, including his expenses for rent, groceries, and transportation. But section 4059 provides that as a general matter, in calculating net disposable income, the only deductions from gross income are the party's state and federal income tax liability, FICA contributions, mandatory retirement deductions, health insurance premiums, child support, and job related expenses. (§ 4059.)

To the extent Rocky argues that his being unemployed and therefore lacking current income precludes a finding that he has ability to pay Jennie's fees, he downplays the evidence of his earning capacity. (See *Sullivan*, *supra*, 37 Cal.3d at p. 768 [in assessing ability to pay the court "may consider all the evidence concerning the parties' income, assets and abilities"].) There was evidence that Rocky earned over $155,000 in salary and bonus as an attorney in 2020; that he was a member of the bar in good standing; and that shortly after he lost his job in February 2021 he told Jennie that he was working with a recruiter and expected to be employed by March. This is not a case like *In re Marriage of Pollard* (1979) 97 Cal.App.3d 535, which Rocky cites for the proposition that it is error to award attorney fees where evidence supports need but not the other party's ability to pay. (*Id.* at p. 539.) In *Pollard*, both parties were "legitimately on welfare" and "impecunious" and there "was no showing of any reasonable expectation of relief from this condition." (*Ibid.*) Here, in contrast, although Rocky is temporarily without earned income, there is evidence from his qualifications and history of employment, his statement that he expected to be employed in spring 2021,

20

and the fact that he was working with a recruiter, to support a reasonable expectation that he will again be gainfully employed as an attorney. The expectation is further supported by Rocky's evidence that his application for unemployment benefits arose from his inability to "work required hours due to need to care for children due to COVID-19," and the court's finding that schools had since reopened.

In sum, Rocky has not shown that the trial court failed to make the required findings to support its award of fees. Nor has he shown that the fee award is not supported by substantial evidence. Accordingly, we do not reach his arguments concerning prejudice.

## DISPOSITION

The challenged order is affirmed. Respondent shall recover her costs on appeal.

_____
Miller, J.

WE CONCUR:


_____
Stewart, P.J.


_____
Markman, J.*


A162932, *Hearn v. Hearn*

_____

* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Court:  Marin County Superior Court

Trial Judge:  Hon. Verna A. Adams

Rockford M. Hearn, In Pro Per, for Appellant

Mah Wei Law, Sharon F. Mah  for Respondent

A162932, *Hearn v. Hearn*